Citation Nr: 1331560 
Decision Date: 09/30/13 Archive Date: 10/02/13

DOCKET NO. 05-06 752A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to an extraschedular disability evaluation for service-connected Sunderland Grade IV-V injury to branches of lingual and mandibular branches of the 5th cranial nerve (hereinafter "trigeminal nerve disability"). 


REPRESENTATION

Veteran represented by: Veterans of Foreign Wars of the United States


WITNESSES AT HEARING ON APPEAL

The Veteran, L.S., and C.B., M.D.


ATTORNEY FOR THE BOARD

A. Nigam, Counsel


INTRODUCTION

The Veteran served on active duty from December 1999 to February 2004. 

This matter comes on appeal before the Board of Veterans' Appeals (hereinafter "Board") from a July 2004 rating decision of the Department of Veterans Affairs (hereinafter "VA") Regional Office (hereinafter "RO") in Roanoke, Virginia. In that decision, the RO, inter alia, granted service connection for sural nerve entrapment syndrome of the left ankle, with a 0 percent (non-compensable) evaluation effective March 1, 2004. In a subsequent March 2005 rating decision, the RO granted an increased 20 percent evaluation for sural nerve entrapment syndrome, left ankle, effective March 1, 2004. 

The Veteran testified before the undersigned Veterans Law Judge (hereinafter "VLJ") at a January 2009 hearing at the VA Central Office in Washington, DC. The hearing transcript has been associated with the claims file. 

The Veteran submitted a March 2009 motion to modify his hearing transcript; the Veteran identified typographical errors and misspelled names in the transcript and provided corrections. The Board has accepted the Veteran's transcription of the hearing with his corrections and has reviewed the transcript accordingly. 

In September 2009, the Board, inter alia, determined that the criteria for a 30 percent evaluation for intractable sural nerve entrapment syndrome of the left ankle had been met. The Veteran appealed the September 2009 Board's decision that denied service connection for dental trauma to the United States Court of Appeals for Veterans Claims (hereinafter "Court"). 

In a September 2011 Memorandum Decision, the Court vacated the Board's denial of service connection for dental trauma and remanded it to the Board for additional consideration. The Court found that although the RO determined that the award of a 50 percent disability evaluation (the highest available schedular rating) for the Veteran's trigeminal nerve injury was a complete grant of benefits and closed the Veteran's appeal as to that issue, the RO failed to consider the possibility of a higher rating through extraschedular consideration. See March 2008 RO rating decision. The case was remanded so that the Board could consider whether the Veteran's condition required a referral for an extraschedular rating for his service-connected trigeminal nerve injury. In accordance with the law of the case doctrine, the remaining issue on appeal is as listed on the cover page. See Chisem v. Gober, 10 Vet. App. 526, 527-28 (1997) (under the "law of the case" doctrine, the Board is bound by the findings contained in the Court's decision and is not free to do anything contrary to the Court's prior action with respect to the same claim). 

In March 2012, the Board determined that additional development was required and remanded the claim of entitlement to an extraschedular disability rating for the trigeminal nerve disability, and remanded the matter to the RO via the Appeals Management Center (hereinafter "AMC") in Washington, DC. Here, the Board instructed that the Veteran's claim be forwarded to the Director of VA's Compensation and Pension Service (hereinafter "C&P") for consideration of an extraschedular evaluation. This determination was rendered by the Director of C&P in August 2012. As such, the Board finds there has been substantial compliance with prior remands, and adjudication of the instant claim may proceed. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

In evaluating this case, the Board has not only reviewed the physical claims file, but has also reviewed the eFolder on Virtual VA (hereinafter "Virtual VA") to ensure a complete assessment of the evidence. Additional, pertinent medical evidence was added to Virtual VA in July 2013. A review of these documents reveals that they are either duplicative of the evidence in the paper claims file or are irrelevant to the issue on appeal. See 38 C.F.R. §§ 20.800; 20.1304. The Board finds that there is no prejudice in proceeding with consideration of this case without affording the RO an opportunity to issue a supplemental statement of the case (hereinafter "SSOC"); hence, proceeding with the claim without a remand to the RO is not prejudicial to the Veteran. As such, the Board will proceed to consider the appeal on the merits. See 38 C.F.R. § 20.1304(c) (2013). 


FINDINGS OF FACT

1. The Veteran is receiving the maximum assignable schedular disability rating of 50 percent for the service-connected trigeminal nerve disability. 

2. The Veteran's service-connected trigeminal nerve disability does not cause impairment that is so exceptional or unusual as to render impractical the application of the regular schedular standards. 


CONCLUSION OF LAW

The criteria for the assignment of an extraschedular disability rating in excess of 50 percent for trigeminal nerve disability have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2002 & Supp. 2012); 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.7, 4.124a, including Diagnostic Code (hereinafter "DC") 8205 (2013). 


REASONS AND BASES FOR FINDINGS AND CONCLUSION

In this decision, the Board will discuss the relevant law which it is required to apply. This includes statutes enacted by Congress and published in Title 38, United States Code (hereinafter "38 U.S.C.A."); regulations promulgated by VA under the law and published in the Title 38 of the Code of Federal Regulations (hereinafter "38 C.F.R.") and the precedential rulings of the United States Court of Appeals for the Federal Circuit (hereinafter "Federal Circuit") (as noted by citations to "Fed. Cir.") and the United States Court of Appeals for Veterans Claims (hereinafter "Court") (as noted by citations to "Vet. App."). 

The Board is bound by statute to set forth specifically the issues under appellate consideration and its decision must also include separately stated findings of fact and conclusions of law on all material issues of fact and law presented on the record, and the reasons or bases for those findings and conclusions. See 38 U.S.C.A. § 7104(d); see also 38 C.F.R. § 19.7 (implementing the cited statute); see also Vargas-Gonzalez v. West, 12 Vet. App. 321, 328 (1999); Gilbert v. Derwinski, 1 Vet. App. 49, 56-57 (1990) (the Board's statement of reasons and bases for its findings and conclusions on all material facts and law presented on the record must be sufficient to enable the claimant to understand the precise basis for the Board's decision, as well as to facilitate review of the decision by courts of competent appellate jurisdiction). The Board must also consider and discuss all applicable statutory and regulatory law, as well as the controlling decisions of the appellate courts. 

Duties to Notify and Assist

The Veterans Claims Assistance Act (hereinafter "VCAA") describes VA's duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2012). 

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information, and any medical or lay evidence, that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a) (West 2002); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). Proper VCAA notice must inform the Veteran of any information and evidence not of record (1) that is necessary to substantiate the claims; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. See 38 C.F.R. § 3.159(b)(1). 

With regard to notice regarding an initial evaluation following the grant of service connection, once service connection is granted, the claim is substantiated and additional VCAA notice is not required; any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

Filing a notice of disagreement (hereinafter "NOD") begins the appellate process, and any remaining concerns regarding evidence necessary to establish a more favorable decision with respect to downstream elements (such as an effective date) are appropriately addressed under the notice provisions of 38 U.S.C.A. §§ 5104 and 7105. Goodwin v. Peake, 22 Vet. App. 128 (2008). Where a claim has been substantiated after the enactment of VCAA, the Veteran bears the burden of demonstrating any prejudice from defective VCAA notice with respect to the downstream elements. Id. There has been no allegation of prejudice with regard to the notice in this case; hence further VCAA notice is not required with regard to the initial rating appeal. 

In a freestanding claim for an increased evaluation, the VCAA requirement is generic notice: the type of evidence needed to substantiate the claim, which consists of evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned. Vazquez-Flores v. Shinseki, 580 F.3d 1270 (Fed. Cir. 2009). 

Pre- and post-adjudication VCAA letters dated in July 2006, September 2008, March 2010, May 2011 and July 2013, collectively explained the evidence necessary to substantiate the claim, and informed the Veteran of his and VA's respective duties for obtaining evidence. The Veteran was also advised of the type of evidence needed to substantiate the claim for an increased rating, which consists of evidence demonstrating a worsening or increase in severity of the disability and the effect that worsening has on employment, as well as general notice regarding how disability ratings and effective dates are assigned, in compliance with Vazquez-Flores v. Peake, 22 Vet. App. 37 (2008). These letters also explained how a disability rating is determined for a service-connected disorder and the basis for determining an effective date upon the grant of any benefit sought, in compliance with Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-491 (2006). The claim was readjudicated in a March 2013 supplemental statement of the case (hereinafter "SSOC"). Accordingly, prejudicial error in the timing or content of VCAA notice has not been established and any error is not outcome determinative. See Shinseki v. Sanders, 129 S. Ct. 1696 (2009) (reversing prior case law imposing a presumption of prejudice on any notice deficiency). 

Further, if any notice deficiency is present in this case, the Board finds that any prejudice due to such error has been overcome by the following: (1) based on the communications sent to the Veteran over the course of this appeal, he clearly has actual knowledge of the evidence he is required to submit in this case; and (2) based on the Veteran's contentions as well as the communications provided to him by VA, it is reasonable to expect that he understands what is needed to prevail. See Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009); Fenstermacher v. Phila. Nat'l Bank, 493 F.2d 333, 337 (3d Cir. 1974) ("[N]o error can be predicated on insufficiency of notice since its purpose had been served."). In order for the Court to be persuaded that no prejudice resulted from a notice error, "the record must demonstrate that, despite the error, the adjudication was nevertheless essentially fair." Dunlap v. Nicholson, 21 Vet. App. 112, 118 (2007). 

VA has a duty to assist veterans in obtaining evidence necessary to substantiate their claims. The claims file contains in-service and post-service medical treatment records, and reports of VA examinations and addenda (also known in the record as Disability Benefits Questionnaire or "DBQ" and as QTC Medical Services examination or "QTC") in June 2005, July 2005, February 2008, March 2008, April 2010 and June 2011, respectively, to evaluate the severity of his service-connected trigeminal nerve disability. The Board finds that the VA examinations are adequate to decide the case because, as shown below, they were based upon consideration of the Veteran's pertinent medical history, his lay assertions and current complaints, and because they describe the disability picture of each service-connected disability in detail sufficient to allow the Board to make a fully informed determination. Barr v. Nicholson, 21 Vet. App. 303 (2007) (citing Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). 

At the January 2009 hearing, the undersigned VLJ and representative for the Veteran outlined the issue on appeal and engaged in a colloquy as to substantiation of the claim, including identifying relevant types of evidence. Overall, the hearing was legally sufficient and the duty to assist has been met. 38 U.S.C.A. § 5103A (West 2002 & Supp. 2012); Bryant v. Shinseki, 23 Vet. App. 488 (2010). 

The Veteran has not made the RO, the AMC or the Board aware of any additional evidence that must be obtained in order to fairly decide the claim on appeal. He has been given ample opportunity to present evidence and argument in support of his claim. Pursuant to 38 C.F.R. § 3.655, all relevant evidence necessary for an equitable disposition of the Veteran's appeal of the issue have been obtained and the case is ready for appellate review. The Board additionally finds that general due process considerations have been complied with by VA. See 38 C.F.R. § 3.103 (2012). 

The Merits of the Claim-Extraschedular Considerations

The Veteran is in receipt of a 50 percent evaluation, the highest schedular evaluation available, for his trigeminal nerve disability. However, on a claim for an original or an increased rating, the claimant will generally be presumed to be seeking the maximum benefit allowed by law and regulation, and it follows that such a claim remains in controversy where less than the maximum available benefit is awarded. See AB v. Brown, 6 Vet. App. 35, 38 (1993). Service connection for chronic periodontal disease for treatment purposes was granted as secondary to the trigeminal nerve disability. The Court in its September 2011 Memorandum Decision, indicated that the Veteran's chronic periodontal disease may have had a significant negative effect on his earning capacity, and required frequent, highly specialized treatment, often under anesthesia. Consequently, the Court remanded to the Board the issue of entitlement to an extraschedular evaluation for the Veteran's trigeminal nerve disability. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

Where there is a question as to which of two separate evaluations shall be applied, the higher evaluation will be assigned if the disability more closely approximates the criteria required for that particular rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability, such doubt will be resolved in favor of the veteran. 38 C.F.R. § 4.3. 

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; Peyton v. Derwinski, 1 Vet. App. 282 (1991). While the regulations require review of the recorded history of a disability by the adjudicator to ensure a more accurate evaluation, the regulations do not give past medical reports precedence over the current medical findings. Where an increase in the disability rating is at issue, the 'present level' of the Veteran's disability is the primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, where VA's adjudication of an increased rating claim is lengthy, a claimant may experience multiple distinct degrees of disability that would result in different levels of compensation from the time the increased rating claim was filed until a final decision on that claim is made. Thus, VA's determination of the 'present level' of a disability may result in a conclusion that the disability has undergone varying and distinct levels of severity throughout the entire time period that the claim has been pending. This appeal is from the initial disability ratings assigned upon the award of service connection. The entire body of evidence is for consideration. Consistent with the facts found, separate ratings can be assigned for separate periods of time, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119 (1999); see also Hart v. Mansfield, 21 Vet. App. 505 (2007). 
 
VA regulations require that unless the symptoms and/or degree of impairment due to a service-connected disability can be distinguished from any other diagnosed disorders, VA must consider all symptoms in the adjudication of the claim. See Mittleider v. West, 11 Vet. App. 181 (1998). 

Generally, the degrees of disability specified in the rating schedule are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. Schedular ratings are based primarily upon the average impairment in earning capacity, that is, upon the economic or industrial handicap which must be overcome and not from individual success in overcoming it. 38 C.F.R. § 4.15. 
To afford justice in exceptional situations, however, an extraschedular rating may also be assignable. 38 C.F.R. § 3.321(b). The Board may not, in the first instance, assign an increased rating on an extraschedular basis, but may determine whether referral for extraschedular consideration is warranted, provided that it articulates the reasons or bases for that determination. See Bagwell v. Brown, 9 Vet. App. 337, 339 (1996). This determination follows a three-step inquiry. See Thun v. Peake, 22 Vet. App. 111, 115 (2008). 

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, the level of severity and symptomatology of a veteran's service-connected disability must be compared with the established criteria found in the rating schedule for that disability. Id. If the rating criteria reasonably describe a veteran's disability level and symptomatology, the disability picture is contemplated by the rating schedule. Therefore, the assigned schedular evaluation is adequate and no referral is required. Id. If the schedular evaluation does not contemplate the level of disability and symptomatology, and is found inadequate, the second step of the inquiry requires the Board to determine whether the exceptional disability picture exhibits other related factors such as marked interference with employment or frequent periods of hospitalization. Id. at 115-16. 

The first two steps should be undertaken by comparing the disability picture of each service-connected disability with the criteria in the rating schedule for that disability. The Board should compare the service-connected disability picture with the criteria in the rating schedule for that disability. Johnson v. Shinseki, No. 10-1785, slip op. at 10 (Vet. App. Mar. 27, 2013) (en banc). Extraschedular consideration is undertaken on the basis of each individual service-connected disability. Based on this disability-by-disability approach, the Board is not required to consider whether a veteran is entitled to referral for extraschedular consideration of his service-connected disabilities on a collective basis. Id. 

If analysis of the first two steps shows that the rating schedule is inadequate to evaluate the disability picture and that picture shows the related factors discussed above, the final step requires that the disability be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination of whether the disability picture requires the assignment of an extraschedular rating. Thun, 22 Vet. App. 111. 
 
As noted, in accordance with the September 2011 Court's Memorandum Decision, in the March 2012 remand the Board instructed that the Veteran's claim be forwarded to the Director of C&P for consideration of an extraschedular evaluation. In August 2012, following a review of the claims file, including the Veteran's pertinent medical history and various VA examination reports, and private and VA treatment records, the Director of C&P determined that an extraschedular evaluation is not warranted. As such, the Board may now properly consider entitlement to an extraschedular evaluation on the merits. 

The Board must consider all of the pertinent medical evidence as well as the Veteran's individual circumstances in the determination of whether an extraschedular rating is warranted for his service-connected trigeminal nerve disability. 

The standard of proof to be applied in decisions on claims for veterans' benefits is set forth in 38 U.S.C.A. § 5107 (West 2002). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence. See 38 C.F.R. § 3.102. When a claimant seeks benefits and the evidence is in relative equipoise, the claimant prevails. See Gilbert v. Derwinski, 1 Vet. App. 49 (1990). The preponderance of the evidence must be against the claim for benefits to be denied. See Alemany v. Brown, 9 Vet. App. 518 (1996). 


Clinical Evidence

The clinical record, including VA and private treatment records, dated from 2003, reveals the Veteran has complained of a history of nerve damage to the right side of his face after a wisdom tooth extraction, and that he was given a nerve transplant from the lateral area of the left leg to the right mouth that failed to provide relief. The Veteran continued to complain of pain and numbness of the right side of the mouth and tongue, from tip to blade; constant paresthesia of the right side of the mouth and tongue; frequent biting of the tongue and some difficulty eating from the right side of the mouth; and increased sensitivity, including pain and spasms, at the lateral side of the left foot around the area of removal of the nerve. These records fail to show that the Veteran had ever been hospitalized or received in-patient treatment for his service-connected trigeminal nerve disability. 

Notably, an electromyography (hereinafter "EMG") study performed in December 2003 revealed no significant nerve damage; however, an October 2005 VA treatment record indicates observation that the Veteran had had no recovery of sensation in the right side of the tongue and jaw. This report shows an opinion that the Veteran was unlikely to see any improvement with his symptoms, and that Gabapentin, a pain medication, was not helping at that point. 

During this period, the Veteran was treated for chronic gingivitis, periodontitis, dysfunctional tongue and associated saliva secretion, bleeding of the tongue and numbness of the tongue, resulting in total and permanent loss of function and numbness, for which he had been prescribed high doses of nerve pain medication. He reported that his symptoms were worse at night. These records indicate that the Veteran was employed as a computer technician until at least 2006, and that although he had periodic periods of unemployment, was generally employed throughout the appeal period. They fail to show that when the Veteran was unemployed, that it was due to his service-connected trigeminal nerve disability. 

A private dental evaluation report, dated in December 2008, shows that on physical examination, the Veteran had complete numbness of the right side of the lip from midline to the commissure of the lip, complete numbness of the right side of the tongue, and traumatic injury in the right side of the tongue and cheek. The private dentist, "Dr. Baral," observed that the Veteran was missing all four 3rd molars, his lower right mandibular teeth were tender to percussion, and he had accumulation of dental plaque in the right side of the mandibular teeth along with red, inflamed gingival margin. The Veteran had difficulty spitting and pain in the right molar region. Dr. Baral noted that the Veteran incurred damage to the lingual and buccal branches of the mandibular division of the trigeminal nerve as a result of the dental surgical procedure, and that the prognosis of recovery was poor. Dr. Baral opined that it was likely the Veteran would suffer from persistent tongue biting in the right side; persistent cheek and lip biting in the right side; would not be able to brush his teeth properly and maintain oral hygiene, which might result in dental caries and periodontal disease; and would not be able to chew food properly, which might result in nutritional deficiency and impact his quality of life. Dr. Baral indicated that the Veteran had frequent evaluation of his tongue condition, buccal mucosa, cheek and lip of the right side, and had to maintain his oral hygiene as much as possible, visiting a dental office every 3 to 6 months. The Veteran was recommended to get "psychological and monitory support" as much as possible, and to contact his neurologist if his complications increased in severity. 

More recently, in November 2011, the Veteran's private neurologist, "Dr. Bernad," provided a medical opinion, in which it was noted that on physical examination of the mouth the Veteran had a small white spot and was recommended for dental evaluation and possible dental biopsy for leukoplakia. Dr. Bernad noted that the Veteran had disabling neurological conditions that were progressively worsening, and opined that the Veteran's diagnoses, collectively, should rate him at 100 percent disabling. 

VA Examination Reports

VA examination reports, dated from June 2005 to May 2012, generally show a history of injury to the 5th nerve (trigeminal) as the result of a dental surgical procedure while on active duty, and reflect findings of hyperalgesia involving the mandibular branch of the right trigeminal nerve and paresthesia/analgesia of the right lingual nerve. In a July 2005 VA examination addendum, the Veteran's prognosis for recovery was characterized as poor, and it was believed that it was likely the Veteran suffered permanent disability with implications of persistent tongue trauma and biting likely to occur on the right side as the Veteran aged, dental caries and periodontitis that might develop on the right side of the mouth because the Veteran was unable to brush his teeth or gums on this side, and chronic pain that would have a major impact on his nutrition, oral hygiene and quality of life. 

A March 2008 VA examination report reflects the Veteran's diagnosis of "Sunderland Grade IV-V injury to branches of lingual and mandibular branches of 5th cranial nerve" was changed to "paralysis, numbness, and pain in the right tongue, cheek and mandible due to damage to the mandibular lingual divisions of the trigeminal nerve." The examiner explained that the diagnosis was changed because there were subjective reports of constant pain and numbness in the right side of the mouth, and difficulty talking, eating, and caring for teeth of the lower right jaw, and objectively, there was limited range of motion of the jaw and tongue, altered speech and bite marks on the tongue and cheek from biting due to numbness. The examiner observed that the Veteran had documented evidence of permanent damage to the mandibular and lingual branches of the trigeminal nerve with associated chronic pain, which made it very painful to properly care for his teeth, and which would likely lead to serious dental problems with tooth loss in the future. 

An April 2010 VA examination report shows the Veteran complained of functional impairments including constant pain, tongue biting, speech disturbance, weakness, sleep disturbance, eating disturbance and discomfort. On physical examination, the Veteran had gum and inner cheek numbness of the lower half of the right side of his face. 

A June 2011 VA examination report indicates the Veteran reported his initial signs and symptoms, post-surgery in the service, were very limited opening; difficulty chewing/eating and speaking; constant, chronic pain in the jaw, jaw muscles, neck muscles, gums and tongue; lock jaw; clicking of the jaw; grinding and clenching teeth; worn down teeth; and headaches. The Veteran denied symptoms of abscess with drainage. It was noted that he had been treated with Gabapentin with poor response. The examiner noted that the Veteran reported he had been hospitalized and had many surgeries for his condition, including the initial wisdom tooth extraction surgery, and subsequent surgeries to correct the negative results of that initial surgery. 

The Veteran was diagnosed with temporomandibular joint dysfunction associated with bruxism and obstructive sleep apnea secondary to Sunderland grade IV-V injury to lingual and mandibular branches of the 5th cranial nerve (trigeminal). The subjective factors were limited TMJ articulation, pain when chewing and speaking, poor oral hygiene, inflamed gingiva and plaque build-up, severe TMJ, neck and facial pain, lockjaw, clicking and popping during all movements of the jaw, headaches, occulsal wear, clenching and teeth grinding, obstructed airway, and paresthesia of the tongue and right side of the jaw and cheek. 

The examiner opined that the Veteran had speech difficulties due to his dental condition. The etiology was difficulty pronouncing many words due to paresthesia of the tongue, so that he often could not control how his tongue moved or felt where it was in his mouth, and due to limited mobility of the jaw, both of which were due to the trigeminal nerve injury. The examiner noted that, while the Veteran did not say specifically that he had difficulty at work due to his conditions, it could be extrapolated that his difficulty speaking would and did pose a problem for his job, as every job requires some level of verbal communication, which the Veteran found both painful and frustrating due to his inability to pronounce many words. The examiner concluded that the effect of the disability on the Veteran's daily activity was across the entire spectrum of his daily life, including but necessarily limited to speaking, eating, oral hygiene, and sleeping. 

Lay Evidence

A Veteran bears the "'evidentiary burden' to establish all elements of a claim, including the nexus requirement." Fagan v. Shinseki, 573 F.3d 1282, 1287-88 (2009). The Board's duty is to first determine the probative value of all pertinent medical and lay evidence of record based on its credibility and competency, and then weigh the probative value of the evidence regarding all material elements of a claim. See 38 U.S.C.A. § 7104(d); Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011); see also Layno v. Brown, 6 Vet. App. 465, 469 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted"). A "veteran is given the 'benefit of the doubt' 'regarding any issue material' to the veteran's claim 'when there is an approximate balance of positive and negative evidence.'" Fagan, 573 F.3d at 1287 (quoting 38 U.S.C. § 5107(b)). 

Thus, if there is conflicting medical evidence, the Board may not ignore or disregard any medical professional's opinion, but may assign greater probative to one medical opinion over by providing an adequate statement of reasons or bases for doing so. See Owens v. Brown, 7 Vet. App. 429, 433 (1995); Willis v. Derwinski, 1 Vet. App. 66, 70 (1991). A medical opinion is most probative if it is factually accurate, fully articulated, and based on sound reasoning. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

In making all determinations, the Board must also fully weigh the probative value of the lay evidence of record against the remaining evidence of record. See King v. Shinseki, No. 2011-7159 (Fed. Cir. Dec. 5, 2012). If credible, competent lay evidence means any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person. 38 C.F.R. § 3.159(a). Thus, a layperson is competent to report on the onset and continuity of his symptomatology. See Kahana, 24 Vet. App. at 438; Layno, 6 Vet. App. at 470 (a veteran is competent to report on that of which he or she has personal knowledge). Moreover, lay evidence must not be categorically dismissed as incompetent evidence of medical causation merely because it is lay evidence. See King v. Shinseki, 700 F.3d 1339, 1345 (Fed. Cir. 2012). Rather, lay evidence may be competent and sufficient evidence of a diagnosis or nexus if (1) the particular condition at issue is the type of condition that is within the competence of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Kahana, 24 Vet. App. at 433, n.4. The Board must determine on a case-by-case basis whether a particular condition is the type of condition that is within the competence of a lay person. See Jandreau, 492 F.3d 1367-77; see also Kahana, 24 Vet. App. at 438, J. Lance dissenting; Robinson v. Shinseki, 312 Fed. Appx. 336, 339 (Fed. Cir. 2009) (nonprecedential). 

In his VA Form 9, Appeal to the Board of Veterans' Appeals (hereinafter "VA Form 9"), received in March 2005, the Veteran reported that he turned down a job because of his service-connected disability, and that he was in a lot of pain due to his service-connected disability. In a June 2006 VA Form 9, the Veteran reported that he was unemployed. A VA Form 21-4138, Statement in Support of Claim (hereinafter "VA Form 21-4138"), dated in August 2006, reflects the Veteran reported that his disability had a negative impact on his everyday life. Specifically, the Veteran identified that routine things such as eating, drinking and talking had become increasingly difficult over the previous few years, and that from time to time he experienced an unusual amount of pain, which made it almost impossible to function. The Veteran noted that he had been taking medication to alleviate his problem, but there was no improvement. 

In a VA Form 1-646, Statement of Accredited Representation in Appealed Case (hereinafter "VA Form 1-646"), dated in September 2006, the Veteran's representative argued that the record reflected the Veteran suffered a permanent disability (Sunderland grade IV-V injury to 5th cranial nerve (trigeminal)); persistent tongue trauma and biting on the right side; chronic flashing, stab-like pain impacting nutrition, oral hygiene and quality of life; slight to mild speech/oral motor impairment; and extreme pain in brushing teeth, with sensitivity and numbness. The representative noted that the Veteran had not responded to medication, and argued that the Veteran should have been entitled to increased compensation due to the pain he endured. 

Statements from the Veteran's spouse, former fellow service-member and former coworker, received in January 2007, reveal observations that the Veteran's eating, talking and daily routine were interrupted by problems with his tongue. Specifically, the Veteran's spouse, former fellow service-member and former coworker had witnessed the Veteran bite his tongue during his meals, and draw blood, which made it difficult for him to continue eating. He also experienced pain while brushing his teeth and while biting into anything hard due the dental trauma caused by his service-connected disability. 

In a statement received in November 2007, the Veteran requested that, due to his ongoing pain, his need for acupuncture and traditional treatments for pain and numbness in his right jaw and right side of his tongue from 2005 to 2006, along with his need to seek emergency care "a couple of times a week," he be granted an increased rating for his trigeminal nerve disability. The Veteran reported that he had tried a couple of different medications without improvement, and that he experienced constant, overwhelming pain, resulting in complete paralysis of his trigeminal nerve, making it impossible to talk, eat, sleep or work. He indicated that his flare-ups occurred once or twice a week, lasting for several hours, and up to 24 hours. 

In a VA Form 1-646, dated in October 2007, the Veteran's representative argued that the Veteran experienced chronic, flashing, stab-like pain that impacted his nutrition, oral hygiene and quality of life. The representative noted that the Veteran also had a slight to mild speech/oral motor impairment, and expressed experiencing extreme pain in brushing his teeth, sensitivity and numbness, which did not respond to medication. 

A January 2009 statement from the Veteran's former superior officer reflects observations that the Veteran's trigeminal nerve disability resulted in his inability to taste food, speak correctly and not harm his tongue. It was noted that the Veteran had aspirations of becoming an officer, becoming a U.S. citizen, and obtaining a college degree, which went unrealized due to his damaged tongue. 

As noted, in January 2009 the Veteran, a fellow former service-member and "Dr. Bash" testified as to the nature and severity of his trigeminal nerve disability. Significantly, the Veteran testified that he was employed as a computer programmer for the Department of the Navy, which primarily involved sitting at a computer. He reported that his service-connected trigeminal nerve disability impacted his ability to eat, bite and talk. He noted that he financially was affected by his disability because he had to pay for special care and to go see a doctor. He indicated that he had missed a significant amount of work due to his service-connected disabilities. Moreover, he reported being unable to do his work as a computer programmer well due to psychological problems. He noted that when he experienced pain he could not keep up with other programmers and fell behind at work. 

In a VA Form 21-4138, received in April 2010, the Veteran reported that his trigeminal nerve disability had increased in severity, with symptoms of chronic and intense pain, 24 hours a day, 7 days a week; sleep discomfort; inability to concentrate on professional work, school work and family care; and physical and mental stress related to the severity of pain. The Veteran contended that all of his conditions, including bruxism, complex regional pain syndrome, TMJ and the trigeminal nerve disability have impacted his employment and daily life. 

In August 2010, the Veteran's representative submitted an Appellant's Brief to the Court, in which it was argued that the Veteran's periodontal disease markedly interfered with his employment. The representative argued that during his hearing before the Board the Veteran testified that his disabilities, including his dental disabilities, have impacted the quality of his work. The representative specifically identified the Veteran's pain and inability to sleep due to his periodontal pain, as factors which contributed to his making mistakes at work and putting him behind other programmers. Also, the representative noted that the Veteran's frequent dental treatments, administered with anesthesia, took time away from work, and that these absences, coupled with a decline in his work quality due to the pain he suffered, markedly interfered with his employment in a way not contemplated by the rating schedule. 

In an August 2013 Informal Hearing Presentation, the Veteran's representative argued that the Veteran's trigeminal nerve injury was severe enough to warrant an extraschedular rating despite the fact that VA has granted additional service-connected ratings for headaches secondary to the Veteran's trigeminal nerve injury (30 percent) and nerve entrapment and chronic pain of the left lower extremity under Diagnostic Code 8520 (40 percent); and that the Veteran is now at a 100 percent schedular rating, effective March 27, 2013. 

Director of C&P Administrative Review

In August 2012, the Director of C&P (hereinafter "Director") provided an Administrative Review, and considered the Veteran's assertion that he was entitled to extraschedular consideration under 38 C.F.R. § 3.321(b)(1). Here, the Director observed that only the 5th cranial nerve injury was evaluated for extraschedular consideration, and noted that injury to the 5th cranial nerve was evaluated as 50 percent disabling, effective March 1, 2004. Additionally, obstructive sleep apnea (hereinafter "OSA") secondary to the 5th cranial nerve injury was evaluated as 50 percent disabling, effective April 25, 2011; and temporomandibular joint disease (hereinafter "TMJ") secondary to the 5th cranial nerve injury was evaluated as 30 percent disabling, effective March 11, 2008. The Director indicated that the combined evaluation for these three conditions was 50 percent disabling, effective March 1, 2004; 70 percent disabling, effective March 11, 2008; and 80 percent disabling, effective April 25, 2011. The Director noted that service connection for chronic periodontal disease secondary to the 5th cranial nerve injury had been established for treatment purposes only, and that the Veteran sustained a nerve injury to the left lower extremity when a nerve was removed to help repair the 5th cranial nerve injury. Service connection had been established for the left lower extremity damage and scar at compensable levels. 

The Director reviewed the medical evidence, and observed that a neurology services note by Dr. Bernad, dated November 2, 2011, revealed an examination primarily of the Veteran's left lower extremity. Dr. Bernad indicated that the Veteran's diagnoses should have been evaluated at the 100 percent disability level, but did not contain a discussion of any of the criteria in the rating schedule, or provide any detailed information regarding the Veteran's 5th cranial nerve injury and residual complications. The Director observed that the November 2011 statement was not supported by objective medical evidence. 

The Director noted that a neurology service consultation note, dated January 5, 2011, revealed that the Veteran was employed at the time. Dr. Bernad described the Veteran as appearing normal, and stated that cranial nerves II through XII were normal. Good facial symmetry was noted and motor examination of the upper extremities was reported as normal. The Veteran's tongue was midline and his shrug was found to be normal. Dr. Bernad provided a statement dated November 19, 2010, indicating that the Veteran's rating should be 100 percent, but did not provide detailed information about the appropriate evaluation for each neurological condition that was evaluated. 

The Director observed that the Veteran's spouse submitted a statement on February 25, 2011, in which she reported that her husband's constant walking at night due to OSA caused him to be sleepy and unfocused during the day, which she believed affected his job. She indicated that he fell asleep behind the wheel due to his tiredness, which led to his using public transportation to get to work. 

The Director commented on the March 2010 VA examination, and noted that the examiner found neuralgia on examination of the right mandibular nerve, and gum and inner cheek numbness of the lower half of the right side of the Veteran's face. Paresthesia and partial paralysis of the trigeminal nerve was also noted. During a TMJ examination, also performed in March 2010, examination of the mandible and maxilla revealed no abnormalities, but limited opening and closing of the jaw was noted with popping and pain. Occlusal wear and grinding of the teeth was also noted, and the examiner indicated that the Veteran took prescription medication three times daily to help control the symptoms of the TMJ. 

The Director also noted a September 18, 2008 neurology consultation, which indicated that the Veteran was employed at the time, and showed findings of cranial nerves II through XII with diminished sensation on the right tongue, with the tongue midline. 

The Director indicated that Dr. Bash performed an independent medical evaluation on October 5, 2007, in which he opined that the Veteran experienced a 100 percent loss of mandibular function and should be rated at 100 percent. The Director noted that Dr. Bash failed to discuss the rating schedule criteria, and concluded that the objective findings of Dr. Bash were consistent with the medical evidence in the claims file and did not reveal any condition or combination of conditions that warranted an evaluation in excess of the assigned evaluations. 

The Director commented on a lay statement provided by the Veteran's former coworker, dated in December 2006, which indicated observations that the Veteran bit his tongue while eating lunch, appeared very tired at work, and had problems with his eyes glazing over. The former coworker noted that these problems affected the Veteran's job performance; however, he failed to provide any details about the performance problems, and did not indicate that he ever supervised the Veteran. 

The Director addressed the June 2005 VA examination, in which the Veteran was observed to have hyperalgesia involving the mandibular branch of the right trigeminal nerve and paresthesia/analgesia of the right lingual nerve. The Director noted that an addendum to the examination report, dated in July 2005, showed findings of persistent tongue trauma and biting that were found to likely to occur on the right side as the Veteran aged. This addendum also indicated that dental caries and periodontitis might develop on the right side due to an inability to brush the teeth on the right side. The staff periodontist also indicated that the Veteran was likely to experience chronic pain which would have a major impact on his nutrition, oral hygiene and quality of life. 

The Director noted that the Veteran submitted a VA Form 21-1900, Application for Vocational Rehabilitation Services, on April 21, 2005, which revealed that the Veteran reported he was employed on a full time basis as a systems analyst/programmer at Howard University Hospital. The Director noted that on VA Form 9's received in March 2005 and June 2006, the Veteran reported that he was unemployed due to his service-connected injuries. He also stated that he was unable to find employment due to his service-connected injuries, but did not provide any evidence from employers to support his contentions. 

The Director observed that during an eye clinic treatment visit in January 2006, the Veteran reported that he wanted to postpone his eye surgery until June due to work issues, and reported that he had recently begun another job. An outpatient treatment note, dated in September 2004, revealed that the Veteran was working as a computer technician. He reported constant paresthesia of the right side of his mouth and tongue. Facial symmetry was found, and an examination of the mouth revealed good dentition and no edema or exudate of the pharynx. Medication was prescribed for the facial nerve condition. 

The Director noted that there were no surgeries or hospitalizations to treat the Veteran's cranial nerve damage and secondary conditions noted in the available medical evidence. 

The Director indicated that during the Board hearing in January 2009, the Veteran indicated that he was employed by the Department of the Navy as a computer programmer, and that he had not missed much time from work, but had to attend medical appointments frequently. The Veteran reported that no adverse action had been taken against him at work due to his service-connected medical conditions, and there was no documentation from current or previous employers in the claims file documenting interference with any employment due to service-connected conditions. 

The Director noted that the Veteran received highly specialized dental treatment for periodontal disease secondary to the 5th cranial nerve injury and residuals, and observed that statements from physicians in the claims file show that the Veteran's cranial nerve injury and residual disabilities may affect employment in the future; however, currently the Veteran is employed and has been employed for the majority of the time period of the review. The Director indicated that extraschedular evaluations are assigned in cases where an exceptional or unusual disability picture is presented with such related factors as marked interference with employment or frequent periods of hospitalization that renders application of regular rating scheduler standards impractical. The Director held that in the Veteran's case no unusual or exceptional disability pattern had been demonstrated that would render application of the regular rating criteria as impractical. The Director noted that the evidentiary record did not demonstrate that the symptomatology consistently associated with the service-connected injury to the 5th cranial nerve and the residual disabilities were not wholly contemplated by the criteria utilized to assign the current evaluation. The Director concluded that entitlement to an extraschedular evaluation for the Veteran's 5th cranial nerve injury and residual disabilities was not established. 

Analysis

The Board agrees with the findings of the Director of C&P in the August 2012 Administrative Review. Ultimately, the Board must determine whether the Veteran's trigeminal nerve disability presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. See Thun v. Peake, 22 Vet. App. 111 (2008). The Board has reviewed and considered the evidence of record and agrees with the Director's denial of an extraschedular rating for the trigeminal nerve disability. Specifically, the Board in its capacity as a finder of fact finds that the manifestations of the Veteran's trigeminal nerve disability are adequately contemplated by the applicable rating criteria. See Elkins v. Gober, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("[f]act-finding in veterans cases is to be done by the expert BVA [Board]..."). 

In this regard, throughout this appeal the Veteran's primary complaints have been of chronic pain, difficulty eating, difficulty maintaining dental hygiene and difficulty talking, for which he has required frequent anesthesia treatments. This type of impairment, in any event, is nonetheless contemplated by the Rating Schedule under 38 C.F.R. § 4.124a, DC 8205. And, the Board notes that some of these symptoms are contemplated by the additional separate secondary service connection ratings as outlined above. Diagnostic Code 8205 provides a 50 percent rating for complete paralysis of the fifth (trigeminal) cranial nerve. The trigeminal nerve controls facial sensation and the muscles of mastication. DORLANDS ILLUSTRATED MEDICAL DICTIONARY 1279 (31st Ed. 2007); see Kirwin v. Brown, 8 Vet. App. 148, 153 (1995). The Board acknowledges that it is without authority to make a medical determination as to what constitutes complete paralysis of the trigeminal nerve, the Board may permissibly draw inferences from the medical evidence, including an overall reading of a VA examination report, and any inferences resulting in a medical determination must be independent and cited. Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011); see also Monzingo v. Shinseki, 26 Vet. App. 97, 106 (2012); Acevedo v. Shinseki, 25 Vet. App. 286, 293-94 (2012). In this case, the Board infers that complete paralysis of the trigeminal nerve, which controls facial sensation and the muscles of mastication, then it logically follows that symptoms such as an inability to eat and talk will accompany the disability. 

What the evidence in this case does not show is that the manifestations of the Veteran's service-connected trigeminal nerve disability have resulted in unusual disability or impairment that has rendered the criteria and/or degrees of disability contemplated in the Schedule impractical or inadequate. The Court has recognized that "the effect of a service-connected disability appears to be measured differently for purposes of extraschedular consideration under 38 C.F.R. § 3.321(b)(1) ... [than] for purposes of a [total disability evaluation based upon individual unemployability due to service-connected disability (hereinafter "TDIU")] TDIU claim under 38 C.F.R. § 4.16." Kellar v. Brown, 6 Vet. App. 157, 162 (1994). While the former regulatory provision requires marked interference with employment, the latter requires evidence of unemployability. Id. 

The Board further observes that, even if the available schedular evaluation for the service-connected trigeminal nerve disability is inadequate, the Veteran did not exhibit other related factors such as those provided by the regulation as "governing norms." In this regard, the record does not show that the Veteran had required any hospitalizations for his disability. Although the Veteran has been repeatedly treated for a variety of neurological, dental and facial problems related to his trigeminal nerve disability, and although he has been prescribed pain medications for this disability, the record fails to show that he underwent hospitalization or in-patient treatment for his trigeminal nerve disability. Factors such as requiring periodic medical attention are clearly contemplated in the Schedule and provided for in the evaluation assigned herein. 

In addition, although there has been mention of a significant impact on his employment because of his service-connected trigeminal nerve disability, to the extent that he has difficulty communicating at work due to the numbness he experiences in his mouth, and even time lost from work because of this disability, there was no objective evidence in the record to indicate that this service-connected trigeminal nerve disability caused impairment with employment over and above that which is contemplated in the assigned scheduler rating. See Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993) [noting that the disability rating itself is recognition that industrial capabilities are impaired]. Further, as noted, 38 C.F.R. § 4.1 specifically sets out that "[g]enerally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbations or illnesses proportionate to the severity of the several grades of disability." The evidence ultimately establishes that he continues to work full-time as a computer programmer, and there is no suggestion of less than favorable performance reviews, demotions, or denials of promotions on account of this disability that would in turn take it outside the norm of the type of impairment generally experienced because of this type of disability. 

While the Board finds that the competent and credible lay statements of record collectively reveal opinions that the Veteran's trigeminal nerve disability greatly impacted his ability to function effectively at work, the Board finds that these opinions are too general as they fail to distinguish between the pain and psychological problems the Veteran experienced due to all of his service-connected disabilities, and the pain he experienced due specifically to his trigeminal nerve disability. In this regard, the Veteran himself has testified that his leg and scar disabilities, and his psychological problems, have caused him problems with sleep and his ability to function at work; however, he never stated that communication issues related to his trigeminal nerve disability impaired his employment, despite the June 2011 VA examiner speculating that it might have. Also, while he has reported that he required frequent trips to the dentist for cleaning and teeth maintenance related to his service-connected disability, he did not report that the pain medication he had been taking for his nerve pain caused any side-effects such as drowsiness, which would have impaired his ability to function at work. 

As such, the Board therefore has determined that an extraschedular evaluation pursuant to 38 C.F.R. 3.321(b)(1) is not warranted. The Veteran's claim, then, must be denied since the preponderance of the evidence is unfavorable, not instead supportive of the claim or in relative equipoise, meaning about evenly balanced for and against it. 38 C.F.R. § 4.3. 


ORDER

An extraschedular disability evaluation for service-connected trigeminal nerve disability is denied. 




____________________________________________
S. L. Kennedy
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs