SCHOELEN, Judge:
The appellant, Rick K. Kahana, appeals through counsel the portion of an August 10, 2009, Board of Veterans’ Appeals (Board) decision that denied him entitlement to service connection for a right knee disability including as secondary to a service-connected left knee disability.[1] Record of Proceedings (R.) at 3-17. This appeal is timely, and the Court has jurisdiction to review the Board’s decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The question before the panel is whether the Board’s findings concerning the credibility of the appellant’s lay statements conflict with the Court’s holding in Colvin v. Derwinski, 1 Vet.App. 171 (1991). Because the Court holds that the Board erred in making a medical determination concerning the severity of an anterior cruciate ligament (ACL) in violation of Colvin, the Court will vacate the portion of the Board’s decision denying the appellant entitlement to service connection for a right knee disability and remand the matter for further proceedings consistent with this opinion.
I. BACKGROUND
A. Facts
The appellant served on active duty in the U.S. Army from September 1976 until September 1979. R. at 737. The appellant’s service medical records (SMRs) and service separation report of medical history include extensive references to in-service injuries to his left knee. R. at 613— 708, 613-15. There is no reference to an injury to the right knee in the appellant’s service separation report.[2] Id. By March 1980, the appellant had been granted service connection for his left knee injuries. R. at 603.
In April 1993, Dr. Frederick G. Nicola, the appellant’s private orthopedist, performed arthroscopic surgery and an ACL *431 reconstruction on the appellant’s right knee.[3] R. at 262. According to the records of Dr. Sam Bakshian, the appellant’s left ACL was surgically repaired for the first time in the early 1990s. R. at 558. Dr. Bakshian also reported that the appellant injured his back and both knees in 1995 while performing as a stuntman. R. at 509. Dr. Nicola subsequently performed a bilateral ACL reconstruction. Id.
The appellant was provided a hearing before the Board in September 2007. R. at 806-26. There, he stated that he injured his right knee in service, and was unsure why the injury did not appear in his SMRs. R. at 311. He related that his original left knee injury was not fixed properly, and that led him to put too much pressure on his right leg so that when he was in a kickboxing competition in 1978 in Korea he “got kicked” and “got knocked down” and the right knee “snapped.” R. at 311, 321. The appellant said “it was another ACL injury.” R. at 321. The appellant also reported that he sustained an additional injury to his right knee following service, but attributed both the in-service and postservice injuries to the fact that he continually favored his left leg. R. at 325.
Following the appellant’s hearing, in November 2007, the Board remanded the matter for additional development, which included providing the appellant with a VA medical examination “to determine the likely etiology of [his] current right knee ... disability].” R. at 300-05. The Board noted:
The veteran has not received a VA examination to specifically evaluate whether there is a relationship between his right knee ... disability] and his military service.... As he has made reasonable allegations regarding the presence of such a relationship, the Board finds that such a VA examination is warranted prior to final adjudication of his claim.
R. at 302 (emphasis added).
In a December 2008 VA examination report, the examiner recorded the appellant’s assertions that his right knee snapped during an in-service kickboxing competition. R. at 58. The appellant stated that he was seen at a clinic and was told he had only sustained a sprain. Id. He related that he continued to have problems following his discharge, and was eventually diagnosed with a right ACL tear that required surgical repair in the 1990s. Id.
The examiner concluded that the appellant injured his right knee while in service in 1979, but noted that the appellant did not seek treatment until the 1990s. R. at 73-74. The examiner also concluded that the appellant’s right knee injury resulted from his habit of putting more weight on his right knee after numerous left knee injuries. R. at 74. In reaching her conclusions, the examiner reviewed private medical records, but did not review SMRS or VA records, and stated that she based her opinion on the history given by the appellant and the records of Dr. Nicola. Id.
VA requested that the claims folder be returned to the examiner who completed the December 2008 examination for “addendum, opinion[,] and r[a]tionale for opinion.” R. at 54. Further instructions on the request stated:
*432 Examination report states SMR[ ]s NOT reviewe[d]. [Social Security Administration] records show [appellant] sustained injuries in 1994 secondary to work as a stuntman. No right knee injury in service. Injuries sustained post-service were not discussed.

Id.

Subsequently, in a March 2009 VA examination report, the same examiner who had performed the 2008 examination noted that the appellant reported an in-service injury to his right knee, but that there was no documentation in his SMRs of a right knee injury. R. at 47-48. The examiner concluded that the appellant’s right knee injury is not related to his military service. R. at 48. As rationale for her decision, the examiner stated that “[t]here is no documentation of right knee injury in the [appellant’s SMRs] to support [his] claim.” R. at 48^49. The examiner, discussing the appellant’s private medical records, noted that, while Dr. Nicola’s letter indicates an in-service right knee injury, records from Dr. Sam Bakshian indicate that the appellant’s right knee ACL tear was from a 1994 work-related injury. R. at 48. The examiner further found that the appellant’s right knee condition “is not felt to be caused by or related to” his left knee condition. R. at 49. As rationale, the examiner stated that the appellant’s injury, an ACL ligament sprain, “resulted from a specific trauma incident and is not an overuse type of injury. Medical records reviewed did not support that a right knee injury occurred during the [appellant’s] service but rather was a work-related injury.” Id.
The Board, in its August 10, 2009, decision here on appeal, denied the appellant entitlement to service connection for a right knee disability including as secondary to a service-connected left knee disability. The Board noted that the appellant’s SMRs show that he injured his left knee while in service but do not show that he injured his right knee. R. at 14. The Board then found that the appellant’s assertion that he tore his right ACL during service was not credible. R. at 14-15. The Board also found that the appellant was not competent to “provide an opinion regarding medical nexus.” R. at 16. The Board found that the evidence failed to establish any continuity of symptomatolo-gy in his right knee after service, and the lengthy gap between his service and the first evidence of a right knee disorder in 1993 is “a factor against a finding that the disability was incurred or aggravated in service.” Id.
Regarding the March 2009 VA medical opinion, the Board found that it “provides specific probative evidence weighing against a finding that the [appellant’s] current right knee disability is related to service or that it was caused or aggravated by the [appellant’s] service[-]connected left knee disability.” R. at 16.
B. Arguments on Appeal
The appellant argues that the Board made an improper medical finding based on the nature of his claimed injury when it found that, had the appellant sustained such an injury in service, it would have required treatment and thus should have appeared in his SMRs. Appellant’s Brief (Br.) at 8-9. The appellant also contends that VA, when it requested a revised medical opinion, improperly impinged on the examiner’s impartiality by stating to the examiner that the appellant had sustained no right knee injury in service. Id. at Ills. Finally, the appellant argues that the Board failed to provide an adequate statement of reasons or bases for its decision because it rejected his lay testimony based on a lack of supporting medical records and that the revised medical opinion is *433 inadequate because it is based on an inaccurate factual premise. Id. at 8-9, 13-17.
The Secretary argues that the Board’s finding that the appellant’s injury should have required medical treatment was not an improper medical finding, but permissible as an “inference based on the evidence.” Secretary’s Br. at 12. The Secretary also asserts that the VA examiner, in her first opinion, relied only on medical history as provided by the appellant and private medical records. Id. at 14. Her opinion changed, the Secretary contends, after reviewing other evidence found in the claims file. Id. The Secretary further argues that VA asked for a revised opinion for a number of reasons, and that the Agency did nothing to solicit or predetermine the outcome of the examination. Id. at 15-16. The outcome of the revised examination, the Secretary argues, was a reflection of the evidence of record and not tainted by bias or impartiality. Id. at 16-17.
II. ANALYSIS
Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) incurrence or aggravation of a disease or injury in service; and (3) a nexus between the claimed in-service injury or disease and the current disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed.Cir.2009); Hickson v. West, 12 Vet.App. 247, 252 (1999); Caluza v. Brown, 7 Vet.App. 498, 506 (1995), aff'd per curiam, 78 F.3d 604 (Fed.Cir.1996) (table). A finding of service connection is a finding of fact that the Court reviews under the “clearly erroneous” standard of review. See Dyment v. West, 13 Vet.App. 141, 144 (1999).
When deciding a matter, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board’s decision as well as to facilitate review in this Court. See 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet.App. 517, 527 (1995); Gilbert v. Derwinski, 1 Vet.App. 49, 56-57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. See Caluza, 7 Vet.App. at 506; Gilbert, 1 Vet.App. at 57.
A. Lay Testimony[4]
The Board, in its role as factfin-der, “is obligated to, and fully justified in, *434 determining whether lay evidence is credible in and of itself.” Buchanan, 451 F.3d at 1337 (emphasis added). Also, a layperson may be competent “to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional.” Jandreau, 492 F.3d at 1377 (footnote omitted). The Board rejected the appellant’s lay statements based both on credibility and competency.

1. Credibility

In finding that the appellant’s statements lack credibility, the Board stated:
Given that a right ACL tear is quite a significant injury, one would expect to see at least some documentation of it in the [SMRs]. Also, one would expect that the [appellant] would have mentioned this right knee injury on his report of medical history at separation^] but instead this document shows only that the [appellant] reported two separate injuries to the left knee. In addition^] the Board notes that when the [appellant] initially filed his claim, he did not allege a right knee injury in service. Instead he alleged only that he incurred a left knee injury and that his right knee disability was secondary to that injury. The [appellant] then made similar contentions in his Notice of Disagreement. For all of these reasons, the Board does not find his more recent assertions of right knee injury in service credible.
R. at 15.
 Regarding the Board’s statement that, given the nature of the appellant’s injury, some documentation in his SMRs is expected, the Court agrees with the appellant’s argument that the Board violated the Court’s holding in Colvin, supra. Appellant’s Br. at 8-9.[5] In Colvin, the Court held that the Board “must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion.” 1 Vet.App. at 172. Requiring the Board to support its medical determinations with independent medical evidence “ensures that all medical evidence contrary to the veteran’s claim will be made known to him and be a part of the record before this Court.” Id. at 175. In this case, the Board is making a medical determination as to the relative severity, common symp-tomatology, and usual treatment of an ACL injury without citing to any independent medical evidence to corroborate its finding. Indeed, the record is devoid of any medical evidence establishing the relative severity, common symptomatology, and usual treatment of an ACL injury. Therefore, the Court holds that the Board clearly erred when it found the appellant not to be credible based on its determination that a particular injury, which is alleged to have occurred in service, is of the type that should have been documented in the service records and was not.
*435 The Secretary argues that the Board was drawing a permissible “inference based on the evidence.” Secretary’s Br. at 12. Drawing an “inference based on the evidence” is at the heart of any adjudication. However, under Colvin, when a Board inference results in a medical determination, the basis for that inference must be independent and it must be cited. The Court thus finds that the Board has violated Colvin, and its statement of reasons or bases for its determination that the appellant’s lay statements lack credibility is inadequate. See 38 U.S.C. § 7104(d)(1); Allday, Caluza, and Gilbert, all supra. Therefore, in considering the matter on remand, the Board must reassess the weight and credibility of the appellant’s lay statements and adequately explain any negative credibility determination. See Washington v. Nicholson, 19 Vet.App. 362, 367-68 (2005) (it is the Board’s responsibility, as factfinder, to determine the credibility and weight to be given to the evidence).

2. Competency

The Board, in rejecting the appellant’s lay statements based on competency, found that he “does contend that his current right knee disability is related to service and to his service-connected left knee disability, [but] as a layperson he is not competent to provide an opinion regarding medical nexus.” R. at 16. This finding is legally unsupportable. This Court has held that “[l]ay testimony is competent ... to establish the presence of observable symptomatology and ‘may provide sufficient support for a claim of service connection.’ ” Barr v. Nicholson, 21 Vet.App. 303, 307 (2007) (quoting Layno v. Brown, 6 Vet.App. 465, 469 (1994)); see also Jandreau, supra; Charles v. Principi, 16 Vet.App. 370, 374 (2002) (stating that a layperson is competent to offer testimony regarding symptoms capable of observation). And, as stated earlier, there is no categorical requirement of “ ‘competent medical evidence ... [when] the determinative issue involves either medical etiology or a medical diagnosis.’ ” Davidson, 581 F.3d at 1316 (quoting Jandreau, 492 F.3d at 1377). As a result, the Court concludes that the Board’s categorical rejection and failure to analyze and weigh the appellant’s lay evidence in accordance with established precedent renders its statement of reasons or bases inadequate. See 38 U.S.C. § 7104(d)(1); Allday, Caluza, and Gilbert, all supra.
B. December 2008 and March 2009 VA Medical Examinations
The Secretary’s duty to assist includes “providing a medical examination or obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim.” 38 U.S.C. § 5103A(d)(1); see also Green v. Derwinski, 1 Vet.App. 121, 124 (1991). This Court has held that a medical opinion is adequate “where it is based on consideration of the veteran’s prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board’s ‘evaluation of the claimed disability will be a fully informed one.’ ” Stefl v. Nicholson, 21 Vet.App. 120, 123 (2007) (quoting Ardison v. Brown, 6 Vet.App. 405, 407 (1994)).
In evaluating disability claims, the Board is obliged to reject insufficiently detailed medical reports. 38 C.F.R. § 4.2 (2010) (“If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes.”). The appellant does not dispute VA’s authority to request the December 2008 VA examiner to clarify her opinion. Instead, the appellant argues that the statement “[n]o right knee injury in service” (R. at 54) made by VA to the *436 examiner in its request for a revised report infringed upon VA’s responsibility to observe the basic tenets of fair play while gathering evidence. Appellant’s Br. at 11. The appellant’s argument relies on precedent set in Austin v. Brown, 6 Vet.App. 547, 552 (1994), and a related line of cases.
In Austin, the Board’s request for a medical opinion contained a sentence stating: “Clearly, [the veteran’s] in-service chest injury was not related to his fatal pulmonary emphysema.” 6 Vet.App. at 549. The Court found that such a statement by the Board indicates that “there was no process at work to ensure impartiality, and creates the impression that the Board was not securing evidence to determine the correct outcome, but rather to support a predetermined outcome.” Id. at 552. The Court held:
A [Board] decision which relies upon a [Board] medical adviser’s opinion obtained by a process that does not ensure an impartial opinion violates Thurber [v. Brown, 5 Vet.App. 119 (1993) ]-type fair process. We hold that basic fair play requires that evidence be procured by the agency in an impartial, unbiased, and neutral manner. The process employed here cannot be sustained as fair.
Id.; see also Bielby v. Brown, 7 Vet.App. 260, 268 (1994) (holding that VA must pose a hypothetical question to an independent medical expert that “may not suggest an answer or limit the field of inquiry of the expert,” and reliance on an independent medical opinion where the Board constrained the scope of inquiry is improper because such constraints resulted in “limiting [the examiner’s] investigation and tainting the results”); Colayong v. West, 12 Vet.App. 524, 535 (1999) (holding that VA erred because the nature of its questions suggested an answer and impermissi-bly narrowed the examiner’s field of inquiry).
The Secretary attempts to distinguish Austin. Secretary’s Br. at 15. He argues that, in Austin, the Board “provided the answer to the examiner in advance of the examination,” whereas in this case, the Agency asked for a new opinion for a number of reasons, and thus the “[A]gency was not soliciting a particular result, but pointing to the insufficiencies in the 2008 opinion.” Id. at 15-16. The Court is not convinced. Despite the other reasons given to the examiner for a new opinion, the request in this case was unequivocal in stating that there was “[n]o right knee injury in service.”[6] R. at 54. This statement makes the matter at hand much like Austin, where VA made an explicit statement of fact to an examiner that spoke to the crux of the examiner’s opinion and of the case in general.[7] The Court also notes that at the time of the second examination request, there was no adverse credibility determination concerning the appellant’s lay assertions that he injured his right knee in service. Contra Reonal v. Brown, 5 Vet.App. 458, 461 (1993) (holding that a medical opinion based upon the appellant’s account of his medical history and service background was of no probative value *437 where the recitations by the appellant had already been rejected by the 1954 regional office decision). The statement in this case directly contradicted the findings of the VA examiner in her initial December 2008 opinion that the appellant injured his right knee in service. R. at 73. The examiner subsequently reached the opposite conclusion in her March 2009 opinion — that the appellant’s right knee injury was not related to service. R. at 42. The Court is left unsure whether the examiner revised her opinion based on additional evidence she reviewed or because she felt coerced by the Agency’s proclamation against her earlier conclusion. Therefore, the Court finds the request violated the Board’s duty to procure evidence in an “impartial, unbiased, and neutral manner.” Austin, 6 Vet.App. at 552; see also Bielby and Colayong, both supra.
The Secretary further argues that since the SMRs show no right knee injury during service, “there was no bias or impartiality in the addendum request.” Secretary’s Br. at 16. The Court does not agree. As noted above, there appears to be one notation in the SMRs as to a right knee injury. R. at 634. In any event, the lack of medical evidence in service does not constitute substantive negative evidence. McLendon v. Nicholson, 20 Vet.App. 79, 85 (2006). The examiner could have potentially determined, based on other evidence of record including lay statements and private medical opinions, that, regardless of the lack of documentation in the appellant’s SMRs, the appellant injured his right knee in service. The statement in the request that there was no right knee injury in service indicated to the examiner that all of the evidence had already been analyzed and a conclusion reached, and thus impeded her impartiality. On remand, the Board should procure an impartial medical opinion on which to base its decision. In procuring an opinion, the Board is not precluded from asking the physician (1) whether there is any medical reason to accept or reject the proposition that had the appellant had a right knee injury in service, such injury could have lead to his current condition; (2) what types of symptoms would have been caused by the type of ACL injury at issue; and (3) whether a right knee injury as described in the SMRs (R. at 634) could have been mistaken for a sprain but was a precursor to the current condition.
Given this disposition, the Court will not, at this time, address the other arguments and issues raised by the appellant. See Best v. Principi, 15 Vet.App. 18, 20 (2001) (per curiam order) (holding that “[a] narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him”). On remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. See Kay v. Principi, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to benefit sought); Kutscherousky v. West, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court has held that “[a] remand is meant to entail a critical examination of the justification for the decision.” Fletcher v. Derwinski, 1 Vet.App. 394, 397 (1991). The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112 (requiring Secretary to provide for “expeditious treatment” of claims remanded by the Court).
III. CONCLUSION
After consideration of the appellant’s and Secretary’s pleadings, and a review of the record, the portion of the Board’s Au *438 gust 10, 2009, decision denying the appellant service connection for a right knee disability is VACATED and the matter is REMANDED to the Board for further proceedings consistent with this decision.
LANCE, Judge, filed an opinion concurring in the result.

. The Board, in the same decision, granted the appellant service connection for a low back disability. The Board noted that "some level of back problem in service as a result of his kickboxing activities is not unreasonable” and relied on a December 2008 VA examiner, who found that it was as likely as not that the appellant’s low back disability was related to these falls in service. Record of Proceedings (R.) at 14.

. In the decision here on appeal, the Board found that there is no evidence of a right knee injury in the appellant’s SMRs. R. at 14. The Court notes that the record contains a May 16, 1978, clinical record, which reported "effusion sighted r[ight] patella” and increased pain on palpation and on leg lift of the medial and lateral meniscus regions and a limited range of motion. R. at 634. The appellant makes no reference to this record cite and does not specifically dispute the Board’s finding of no SMR evidence of a right knee injury in service. Nevertheless, the appellant maintains that he injured his right knee in service while participating in a Tae Kwon Do match in Korea and did seek medical attention at that time and was told it was "just a sprain.” Appellant’s Brief at 10.

. The April 1993 date for the appellant’s right knee surgery performed by Dr. Nicola was recorded in a clinical record. According to the appellant’s medical history contained in a VA medical examination report, the first surgical repair of a right ACL tear occurred in 1994. R. at 58. In January 2002, Dr. Nicola confirmed that he had performed a right ACL reconstruction on the appellant, but did not indicate the date. R. at 578.

. We generally agree with our colleague that too often the Board makes overbroad categorical statements regarding the competency and credibility of lay testimony. However, our disagreement with our colleague's commentary on the proper evaluation of lay evidence starts at its base. Where our colleague begins with the general proposition that lay witnesses generally are not competent to provide evidence on matters that require medical expertise, we understand the Federal Circuit's direction in this area to begin with the basic premise that "in the veterans’ context, traditional requirements for admissibility have been relaxed.” Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed.Cir.2007). Thus, the Federal Circuit has flatly rejected the view that "competent medical evidence is required ... [when] the determinative issue involves either medical etiology or a medical diagnosis.” Id. at 1376-77 (emphasis added). The Board is required to consider "all pertinent medical and lay evidence.” 38 U.S.C. § 1154(a); see also 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.303(a), 3.307(b) (2010). When considering such lay evidence, the Board should determine, on a case-to-case basis, whether the veteran’s particular disability is the type of disability for which lay evidence is competent. See Jandreau, 492 F.3d at 1376-77 (cited in Robinson v. Shinseki, 312 Fed. *434 Appx. 336, 339 (Fed.Cir.2009) (remanding the matter for consideration of the appellant's lay evidence, which requires a “two-step analysis” that begins with an evaluation of whether the veteran’s disability is the type of injury for which lay evidence is competent)). If the disability is of the type for which lay evidence is competent, the Board must weigh that evidence against the other evidence of record in making its determinations regarding the existence of service connection. See Buchanan v. Nicholson, 451 F.3d 1331, 1336-37 (Fed.Cir.2006).

. In his separate statement, our colleague is in agreement with this stated Colvin violation and the reasoning of the majority that follows on this point.

. The Court notes that this statement by VA in the examination request was given even though there is an SMR dated May 16, 1978, that appears to refer to an effusion of the right knee cap with increased pain upon palpation of the meniscus regions and a limited range of motion. R. at 634.

. We express no opinion now as to the circumstances under which it would be appropriate for the Board to inform an examiner that a fact must be accepted as true. Such an opinion would depend on the evidence (or medical evidence) presented in a particular case. Here, the statement by the Board that there was no right knee injury in service was not supported by the record {see supra note 6) and spoke to a crucial fact at issue for which a medical opinion was required.