Citation Nr: 1528189 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 10-45 214 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Louis, Missouri


THE ISSUE

Entitlement to service connection for tinnitus.


REPRESENTATION

Appellant represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. Bosely, Counsel


INTRODUCTION

The Veteran served on active duty from August 1958 to August 1960.

This appeal originally came before the Board of Veterans' Appeals (Board) from a March 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Louis, Missouri.

The matter was previously before the Board in April 2014 and November 2014, at which times it was remanded for further evidentiary development. The case has again been returned to the Board for further appellate action pursuant to 38 C.F.R. § 19.38 (2013). See Murphy v. Shinseki, 26 Vet. App. 510, 513 (2014).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

The most probative evidence of record establishes that it is unlikely that the Veteran's tinnitus is a result of noise exposure during service. 


CONCLUSION OF LAW

The criteria to establish service connection for tinnitus are not met. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

A. Duty to Notify

VA has a duty to notify a claimant as to the information and evidence necessary to substantiate a claim for VA benefits. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Here, the Veteran has been sent notice letters on numerous occasions providing the necessary information, including in December 2009. See 38 U.S.C.A. § 5103. A case-specific notice is not required and any other notice defect is deemed not prejudicial. See VAOPGCPREC 6-2014; Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). Therefore, the duty is satisfied.

B. Duty to Assist

The law also requires VA to make reasonable efforts to help a claimant obtain evidence necessary to substantiate the claims. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c)(d). VA will help a claimant obtain records relevant to the claim(s) whether or not the records are in Federal custody, and VA will provide a medical examination and/or opinion when necessary to make a decision on the claim. 38 C.F.R. § 3.159(c)(4). Here, VA has met the duty to assist the Veteran in the development of the claim being decided herein because his service treatment records have been obtained and appear to be complete. Also, those VA and private treatment records indicated as relevant are of record. Finally, a VA examination has been conducted, and it is adequate to inform the Board's judgment on those complex medical matters raised in this appeal. See McLendon v. Nicholson, 20 Vet. App. 79 (2006); 38 U.S.C.A. § 5103A(d)(2) (West 2014). Accordingly, the duty to assist has been met.

C. Stegall Compliance

The Board also finds that there was substantial compliance with the November 2014 Board remand directives. Specifically, an opinion from a VA examiner was obtained in February 2015. Then, the matter was readjudicated in a March 2015 supplemental statement of the case (SSOC), as directed by the Board. Accordingly, there was substantial compliance with the prior Board remand directives, and no further remand is necessary. See Stegall v. West, 11 Vet. App. 268 (1998); see D'Aries v. Peake, 22 Vet. App. 97, 104-05 (2008).

For the above reasons, the Board finds the duties to notify and assist have been met, all due process concerns have been satisfied, and the appeal may be considered on the merits at this time.

A. Applicable Law

Service connection may be granted for a disability resulting from disease or injury incurred coincident with or aggravated by service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303. Service connection generally requires evidence satisfying three criteria: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship ('nexus') between the present disability and the disease or injury incurred or aggravated during service. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Hickson v. West, 12 Vet .App. 247, 253 (1999).

Certain chronic diseases, which are listed in 38 C.F.R. § 3.309(a),and includes tinnitus, may be presumed to have been incurred during service if manifested to a compensable degree within one year of separation from active service. 38 U.S.C.A. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309; Fountain v. McDonald, 27 Vet. App. 258, 275-75 (2015). Moreover, if a disease listed in 38 C.F.R. § 3.309(a) is shown to be chronic in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity and sufficient observation to establish chronicity at the time. Id. However, if evidence of a chronic condition is noted during service or during the presumptive period, but the chronic condition is not "shown to be chronic, or where the diagnosis of chronicity may be legitimately questioned," i.e., "when the fact of chronicity in service is not adequately supported," then a showing of continuity of symptomatology after discharge is required to support a claim for disability compensation for the chronic disease. Walker v. Shinseki, 708 F.3d 1331, 1333 (Fed. Cir. 2013) (quoting 38 C.F.R. § 3.303(b)). A claimant "can benefit from continuity of symptomatology to establish service connection in the ultimate sense, but only if [the] chronic disease is one listed in § 3.309(a)." Walker, 708 F.3d at 1337.

Service connection may otherwise be granted for any disease diagnosed after discharge when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(a).

The Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Kahana v. Shinseki, 24 Vet. App. 428, 433 (2011).

This includes weighing the credibility and probative value of lay evidence against the remaining evidence of record. See King v. Shinseki, 700 F.3d 1339 (Fed. Cir. 2012); Kahana, 24 Vet. App. at 433-34. Lay evidence may be competent and sufficient evidence of a diagnosis or nexus if (1) the particular condition at issue is the type of condition that is within the competence or common knowledge of a layperson, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Davidson, 581 F.3d at 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Kahana, 24 Vet. App. at 433, n.4. The Board must determine on a case-by-case basis whether a particular condition is the type of condition that is within the competence of a lay person. See Fountain, 27 Vet. App. at 274-75; see also Jandreau, 492 F.3d 1376-77.

A Veteran bears the evidentiary burden to establish all elements of a service connection claim, including the nexus requirement. Fagan v. Shinseki, 573 F.3d 1282, 1287-88 (2009); see also Walker v. Shinseki, 708 F.3d 1331, 1334 (Fed. Cir. 2013). In making its ultimate determination, the Board must give a veteran the benefit of the doubt on any issue material to the claim when there is an approximate balance of positive and negative evidence. Fagan, 573 F.3d at 1287 (quoting 38 U.S.C.A. § 5107(b)).


B. Discussion 

In this case, the appeal must be denied because the record before the Board contains compelling evidence that the Veteran's tinnitus is not related to noise exposure during service. 

In support of his appeal, including in his March 2010 notice of disagreement (NOD), the Veteran wrote that he had ringing in his ears after a 5-inch gun went off during service. In his September 2010 VA Form 9, the Veteran wrote that this "would not go away." The Board notes that it is not materially in dispute that he was exposed to the 5-inch gun blast during service, and this fact is assumed as true. On this basis, his testimonial statements are favorable evidence tending to indicate that (a) he has had tinnitus, and (b) his tinnitus first occurred in service. In this regard, it is generally understood and within the competence of a lay person to recognize the presence of tinnitus and, where credible, establish a continuity of symptoms. See Fountain v. McDonald, 27 Vet. App. 258, 274-75 (2015); Charles v. Principi, 16 Vet. App 370, 374-75 (2002). 

Here, however, the Veteran's own assertions cannot support a grant of service connection because a medical expert has reviewed the matter and explained why the Veteran's belief is medically unsupported. See Kahana, 24 Vet. App. at 442 (a physician may provide an opinion as to whether there is any medical reason to accept or reject the proposition that had a Veteran had an in service, such injury could have led to his current condition). 

Specifically, a VA audiologist reviewed the relevant information and offered an opinion in February 2015. The VA examiner explained:

VBMS eFolder was reviewed. The Veteran denied tinnitus on both his February 24, 2010 exam as well as his July 7, 2014 exam. He denied tinnitus to two different examiners on two different Compensation and Pension exams. The Veteran is being given benefit of the doubt that his spoken word is true and accurate and therefore, it is less likely than not that tinnitus is a result of the gun blast he experienced during service. While tinnitus is known to be a symptom of hearing loss, tinnitus caused by acoustic trauma generally occurs at the time of the trauma and continues thereafter. Even if his left ear hearing loss began due to military noise exposure, it is more likely than not that if tinnitus was caused by that same acoustic trauma event, the onset of tinnitus would have been at the time of the gun blast. As Veteran has denied tinnitus to two examiners, and as the original Appeals Management Center (dated 6/23/14) VA Form 21-2507 states "For purposes of the opinions, the examiner should assume that the Veteran is a credible historian," again, what the Veteran expressed to the examiner is being taken as true and therefore, it is less likely than not that tinnitus was a result of the gun blast during service, or any other military noise exposure, as the Veteran denied tinnitus.

In comparing the relative probative value of the Veteran's own belief and the opinion of the medical expert, the Board must give greater weight to the medical expert's opinion. In addition to bringing her medical expertise to bear on the issue, the VA examiner explained that with the Veteran's denial of tinnitus on two occasions to two different VA examiners, there can be no nexus to service. This VA examiner's conclusion is supported by two prior VA examiners, conducted in February 2010 and July 2014, respectively, both of which noted the Veteran's affirmative denial of tinnitus. See Fountain, 27 Vet. App.at 274 (A medical report stating that the "veteran did not report tinnitus" cannot be considered evidence of a denial of tinnitus during service or after service.).

In a June 2015 brief, the Veteran's representative pointed out that the VA examiner "does not point to a [n]exus[.]" While true, this is nonconsequential because a VA examiner is not required to affirmatively establish what caused a claimed medical condition. Here, the VA examiner was only asked to offer an opinion on the likelihood that the condition resulted from service. See Jones v. Shinseki, 23 Vet. App. 388, 391 (2010) (If the physician is able to state that a link between a disability and an in-service injury or disease is "less likely than not," or "at least as likely as not," he or she can and should give that opinion; there is no need to eliminate all lesser probabilities or ascertain greater probabilities.). The VA examiner was not asked to affirmatively identify what most likely caused the Veteran's tinnitus if not the noise during service. As such, the representative's point is true, but does not undermine the overall strength of the VA examiner's opinion. 

Otherwise, while the Veteran disagrees with the examiner's opinion, he does not have the advanced medical expertise necessary to rebut her opinion, and he cites no evidence of record indicating that the examiner was incompetent, had erroneous facts, or has otherwise misinformed the Board. See Monzingo, 26 Vet. App. 97, 106 (2012). To the contrary, the VA examiner was asked to assume the credibility of the Veteran's assertions, which the VA examiner did. The VA examiner explained why the Veteran's assertions, when taken credible, are consequential medical facts tending to make a nexus to service unlikely. Thus, the VA examiner's medical expert opinion is compelling evidence tending to establish that it is unlikely the gun blast during service could have led to any current tinnitus. See Kahana, 24 Vet. App. at 442.

Because the evidence of record contains substantial evidence making a nexus to service unlikely, which is the primary issue of material fact in dispute in this case, the evidence is not in equipoise on all material issues in this case. Therefore, the appeal must be denied. See Fagan, 573 F.3d at 1287 (quoting 38 U.S.C.A. § 5107(b)).


ORDER

Service connection for tinnitus is denied. 



____________________________________________
MICHAEL E. KILCOYNE 
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs