Citation Nr: 1619680 
Decision Date: 05/16/16 Archive Date: 05/27/16

DOCKET NO. 13-35 504 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Denver, Colorado


THE ISSUES

1. Entitlement to a rating in excess of 30 percent for service-connected chronic pyloric spasms and gastritis.

2. Entitlement to a compensable rating for service-connected bilateral hearing loss. 

3. Entitlement to service connection for a spinal disorder, to include a T-12 compression fracture and lumbar spine degenerative arthritis and disc disease.

4. Entitlement to a rating in excess of 50 percent for service-connected posttraumatic stress disorder (PTSD) with depression and sleep impairment.

5. Entitlement to an initial compensable rating for service-connected dermatitis.

6. Entitlement to a total disability rating based on individual unemployability due to service-connected disabilities (TDIU).



REPRESENTATION

Appellant represented by: Colorado Division of Veterans Affairs


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

A. Ishizawar, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from June 1970 to December 1971.

These matters come before the Board of Veterans' Appeals (Board) on appeal from multiple rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Denver, Colorado. Specifically, a June 2010 rating decision granted an increased rating for chronic pyloric spasms and gastritis, rated 30 percent, effective February 10, 2010 (date of claim); and a July 2010 rating decision granted an increased rating for PTSD with depression and sleep impairment, rated 50 percent, effective February 10, 2010 (date of claim). 

Within one year of the June 2010 and July 2010 rating decisions, on October 28, 2010, the Veteran filed a claim for service connection for a spinal disorder and a claim for TDIU. As part of the TDIU claim, additional evidence was received that was pertinent to the claims addressed in the June 2010 and July 2010 rating decisions. See 38 C.F.R. § 3.156(b) (2015). Accordingly, in July 2011, the RO issued a rating decision that, in pertinent part, continued the 30 percent and 50 percent ratings assigned for the Veteran's chronic pyloric spasms and gastritis and PTSD, respectively; granted service connection for dermatitis, rated 0 percent, effective October 28, 2010 (date of claim); denied service connection for a spinal disorder; denied an increased rating for bilateral hearing loss; and denied entitlement to TDIU. The Veteran's notice of disagreement (NOD) with the July 2011 rating decision was received in July 2012. A statement of the case (SOC) was issued in October 2013, and a substantive appeal was received in December 2013.

In March 2016, a videoconference hearing was held before the undersigned. A transcript of the hearing is associated with the Veteran's claims file. 

Also as an initial matter, the Board notes that additional VA treatment records were associated with the record in December 2015. These records have not been considered by the Agency of Original Jurisdiction (AOJ) in conjunction with the current claim, and the Veteran has not submitted a waiver of initial AOJ consideration for these records. See 38 C.F.R. § 20.1304(c).

The issues of entitlement to service connection for a spinal disorder; entitlement to increased ratings for PTSD with depression and sleep impairment and dermatitis; and entitlement to TDIU are addressed in the REMAND portion of the decision below and are REMANDED to the AOJ.


FINDING OF FACT

On March 16, 2016, prior to the promulgation of a decision in the appeal, the Board received notification from the Veteran that he intended to withdraw his appeal seeking increased ratings for chronic pyloric spasms and gastritis and for bilateral hearing loss; there is no question of fact or law remaining before the Board in these matters.




CONCLUSIONS OF LAW

1. Regarding the matter of an increased rating for chronic pyloric spasms and gastritis, the criteria for withdrawal of an appeal by the appellant are met; the Board has no further jurisdiction in this matter. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. §§ 20.202, 20.204 (2015).

2. Regarding the matter of an increased rating for bilateral hearing loss, the criteria for withdrawal of an appeal by the appellant are met; the Board has no further jurisdiction in this matter. 38 U.S.C.A. § 7105(b)(2), (d)(5) (West 2014); 38 C.F.R. §§ 20.202, 20.204 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSIONS

A. Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. See 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). However, given the Veteran's expression of intent to withdraw his appeal in the matters of the ratings to be assigned for his chronic pyloric spasms and gastritis and bilateral hearing loss, further discussion of the impact of VA's duty to notify and assist is not necessary. 

B. Legal Criteria, Factual Background, and Analysis

The Board has jurisdiction where there is a question of law or fact on appeal to the Secretary. 38 U.S.C.A. § 7104; 38 C.F.R. § 20.101. Under 38 U.S.C.A. § 7105, the Board may dismiss any appeal, which fails to allege specific error of fact or law in the determination being appealed. An appeal may be withdrawn in writing at any time before the Board promulgates a decision. 38 C.F.R. § 20.202. Withdrawal may be made by the appellant or by his authorized representative/attorney and must be in writing (except for appeals withdrawn on the record at a hearing). 38 C.F.R. § 20.204(b).

In a statement received on March 16, 2016, and at a videoconference hearing held on that same date, the Veteran stated that he wished to withdraw his appeal seeking increased ratings for chronic pyloric spasm and gastritis and for bilateral hearing loss. Hence, there is no allegation of error of fact or law for appellate consideration on this claim. Accordingly, the Board does not have jurisdiction to consider an appeal in these matters, and the appeal is dismissed.


ORDER

The appeal seeking a rating in excess of 30 percent for chronic pyloric spasms and gastritis is dismissed.

The appeal seeking a compensable rating for bilateral hearing loss is dismissed.


REMAND

As was noted in the Introduction, in December 2015, additional VA treatment records were associated with the Veteran's claims file. Although these treatment records were associated with the record as part of a separate claim for benefits (not currently before the Board), they contain information pertinent to the claim currently before the Board. The AOJ has not reviewed these records in conjunction with the current claim. However, the Board did not seek clarification from the Veteran or his representative as to whether he wished to submit such a waiver of initial AOJ consideration for this information since the claim is being remanded for additional development anyway. On remand, the AOJ will have the opportunity to review this evidence in the first instance. See Disabled American Veterans, et al. v. Secretary of Veterans Affairs, 327 F.3d 1339 (Fed. Cir. 2003).


Spinal disorder

The Veteran seeks service connection for a spinal disorder, to include a T-12 compression fracture and lumbar spine degenerative arthritis and disc disease. The record reflects his receipt of a Combat Infantryman Badge (CIB); therefore, satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions or hardships of such service even though there is no official record of such incurrence or aggravation. 38 C.F.R. § 3.304(d); see also 38 U.S.C.A. § 1154(b). 

In this case, the Veteran contends he has a spinal disorder that resulted from an in-service injury. Specifically, he states he was injured while serving in the Republic of Vietnam when a B-52 bomber bomb came down in front of him, exploded, and buried him. He states he was strapped to a gurney for at least two months and has experienced back pain continuously since service.

The Veteran's service treatment records are silent for such an injury. In his December 1971 service separation report of medical history, which was completed and signed by him, he reported that he did not have nor had ever had swollen or painful joints; broken bones; bone, joint or other deformity; or recurrent back pain. He also indicated he had not consulted or been treated by any clinics, physicians, healers, or other practitioners within the past 5 years for anything other any minor illnesses. His December 1971 service separation report of medical examination shows that a clinical evaluation of his spine and other musculoskeletal system was normal. The only defects and diagnoses noted at the time of his separation were nasal septal deviation and high frequency sensorineural loss; no notations were made concerning the back.

At the March 2016 videoconference hearing, the Veteran testified that because his injury occurred while they were in the jungles of Vietnam, he was treated in a "little tent hospital," where there were no X-ray machines. See March 2016 hearing transcript, p. 3. He stated he was not treated in a hospital, but was instead transferred from the Delta Company to the Bravo Company where he was kept "in the backroom of the headquarters there." Id. at p. 4. It was at that time, he discovered his back had been broken.

Also at the March 2016 videoconference hearing, the Veteran testified that in 2006, he broke his back again. He stated the 2006 back injury was "up higher and [he] broke it in two more vertebrae." Id. at p. 5. He stated that an X-ray conducted at that time showed "all four breaks," which is how "[he] knew it had been broken in two places before." Id.

The record currently contains a portion of the Veteran's service personnel records, which shows he was transferred from Company A of the 3rd Battalion 187th Infantry to Company E in January 1971, and from Company E to Company D in March 1971. It also contains copies of MRI head studies completed in April 2010 and submitted by the Veteran, which he states shows his "spine crushed and twisted." He also submitted a photo of a soldier lying on a gurney which he described as, "Last day at China Beach, Headed back to Camp Evans this afternoon, to be re-united with my Company, after almost four months in Hospital, surgeries, therapy, and down time! Mouth still wired shut, 40 feet of ace bandages around mid section, with a 12 [inch] leather back brace over that."

Also in the record is a report from a June 2007 VA examination, which was conducted in conjunction with a prior claim. During that examination, lumbar spine compression fracture was diagnosed. Relying on the history provided by the Veteran, the examiner stated, "He had 2 compression fractures that occurred presumably in '71 and then another 2 in 2001."

In February 2011, the Veteran was afforded a VA examination in conjunction with his current claim. Degenerative disc disease of lumbar spine with compression fracture was diagnosed. The examiner estimated that the spine condition began in 1971 and noted that the back was injured again in 2006. He also stated that exploratory surgery was conducted in 1971 in Vietnam for "crush injury." His final diagnosis was status post crush injury with degenerative disc disease of lumbar spine, status post compression fracture, status post debridement surgery, and reduced lordosis, which he stated occurred during the Veteran's service. The examiner did not, however, explain the basis for such an opinion and there is no indication in the report that the Veteran's claims file was reviewed.

Given the foregoing body of evidence, the Board finds that a new examination for a medical opinion is necessary in this claim. See Kahana v. Shinseki, 24 Vet. App. 428, 437 (2011) (explaining that VA is not precluded from asking a physician to opine as to whether there is any medical reason to accept or reject the proposition that a veteran had a claimed injury in service). 

Prior to obtaining a medical opinion in this case, however, a complete copy of the Veteran's service personnel records should be obtained for the record. It is also noted that at the March 2016 videoconference hearing, the Veteran testified he was treated for his postservice back injury at a private facility, Memorial Hospital. The Veteran's representative then indicated these records were already associated with the claims file. See March 2016 hearing transcript, p. 5. On review of the record, however, it appears that while some treatment records from Memorial Hospital have been submitted by the Veteran, complete records related to his postservice back injury are not of record. Accordingly, these records (to include any X-ray reports conducted of the back/spine) should be obtained, if available, prior to scheduling the Veteran for a new VA examination.

PTSD and Dermatitis

A claimant is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination. Snuffer v. Gober, 10 Vet. App. 400 (1997); see also Green v. Derwinski, 1 Vet. App. 121, 124 (1991); Caffrey v. Brown, 6 Vet. App. 377, 381 (1994). Reexaminations, including periods of hospital observation, will be requested whenever VA determines there is a need to verify either the continued existence or the current severity of a disability. 38 C.F.R. § 3.327 (2015).

In the Veteran's December 2013 VA Form 9, substantive appeal, he stated that because it had been "over two years" since his last VA examination, the medical evidence was not up to date. He also provided testimony at the March 2016 videoconference hearing suggesting that the symptoms for his service-connected disabilities have worsened in the intervening years since his last VA examinations. As the Veteran has alleged a worsening in his conditions, and the record shows his last VA examinations for his PTSD and dermatitis were in February 2012 and April 2011, respectively, the Board finds that he should be afforded new examinations.

Also, as the claim is being remanded, any records of treatment that the Veteran has received during the appeal period (i.e., those records not already associated with the claims file) for his PTSD with depression and sleep impairment and dermatitis should continue to be obtained and associated with the record. See also Hart v. Mansfield, 21 Vet App 505 (2007) (holding that "staged" ratings are appropriate in an increased rating claim where the factual findings show distinct time periods when the service-connected disability exhibits symptoms that would warrant different ratings).

TDIU 

The Veteran's claim for TDIU is impacted by his claim for service connection for a spinal disorder, as well as his claims for increased ratings for PTSD with depression and sleep impairment and for dermatitis. As those claims are being remanded, consideration of whether the Veteran is entitled to TDIU must also be deferred pending resolution of the other claims. See Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (where a claim is inextricably intertwined with another claim, the claims must be adjudicated together). 

Accordingly, the case is REMANDED for the following actions:

1. Contact the Veteran and request that he identify the provider(s) of all treatment or evaluation he has received for his spinal disorder and service-connected PTSD with depression and sleep impairment and gastritis, records of which are not already associated with the claims file, and to provide any releases necessary for VA to secure records of such treatment or evaluation.
Obtain complete records of all such treatment and evaluation from all sources identified by the Veteran, to specifically include those treatment records (and X-ray reports) relating to the Veteran's postservice back injury from Memorial Hospital.

2. Secure for the claims file all relevant VA treatment records from the Veteran's local VA Medical Center (dated from December 2015 to present). 

3. Secure for the claims file a complete copy of the Veteran's service personnel record.

4. If any of the above-requested records are unavailable, the claims file should be clearly documented to that effect, and the Veteran must be notified of any inability to obtain these records in accordance with 38 C.F.R. § 3.159(e).

5. After the foregoing development has been completed, schedule the Veteran for a VA examination to assess the nature and likely etiology of his spinal disorder. The Veteran's claims file (to include this remand) must be reviewed by the examiner in conjunction with the examination. Upon examination and interview of the Veteran, and review of pertinent medical history, the examiner should provide opinions responding to the following:

Is it at least as likely as not (50 percent or better probability) that the Veteran's claimed spinal disorder is related to his combat-related military active duty service? 

In addressing this question, the examiner should determine whether there is any medical reason to accept or reject the Veteran's account of having sustained a back injury in service, and whether the X-rays of his back taken at the time of a postservice back injury show the residuals from a prior vertebrae fracture.

The examiner should cite to the medical and competent lay evidence of record and provide reasons for all opinions. The examiner should comment on the medical opinions already of record (i.e., the June 2007 and February 2011 VA medical opinions), expressing agreement or disagreement with the conclusions reached in those opinions, and explaining the rationale for the agreement or disagreement. 

The examiner must also provide reasons for all opinions. If any requested opinion cannot be provided without resort to speculation, the examiner should explain whether the inability to provide the opinion is due to the limits of the examiner's medical knowledge, the limits of medical knowledge in general, or there is additional evidence that would permit the opinion to be provided.

6. After the above records development has been completed, the Veteran should be afforded a VA psychiatric examination to determine the current severity of his service-connected PTSD with depression and sleep impairment as well as its impact on his employability. The Veteran's claims file (to include this remand) must be reviewed by the examiner in conjunction with the examination. The examiner should identify and describe the nature, frequency and severity of all current psychiatric symptoms. The examiner should also opine specifically regarding the impact of the Veteran's psychiatric symptoms on his occupational and social functioning. The examiner should explain the rationale for all opinions given. If he or she is unable to provide any opinion sought, it should be so noted for the record, and the reason therefore explained.

7. After the above records development has been completed, the Veteran should be afforded a VA skin examination to determine the current severity of his service-connected dermatitis. The Veteran's claims file (to include this remand) must be reviewed by the examiner in conjunction with the examination. 

The examiner is asked to perform all indicated tests and studies, and indicate the percentage of the entire body or exposed areas affected by this condition. The examiner should also comment on whether the Veteran's dermatitis requires systemic therapy, such as corticosteroids or other immunosuppressive drugs; and, if so, the duration of any such systemic therapy.

The examiner should further indicate whether the Veteran's dermatitis is deep or results in limited motion and define the area affected by the condition in either square inches or square centimeters. It should also be determined whether the Veteran's dermatitis is unstable, is painful on examination or results in any other functional impairment.

In providing the requested information, the examiner should address the Veteran's testimony at the March 2016 videoconference wherein he stated that he suffers from a rash that is present all over his body and "always flared up." See March 2016 hearing transcript, p. 7.

The examiner should explain the rationale for all opinions given. If he or she is unable to provide any opinion sought, it should be so noted for the record, and the reason therefore explained.

8. After all development requested above has been completed, review the file anew to specifically include an initial review of the aforementioned VA treatment records associated with the record in December 2015, and ensure that the development sought in this remand is completed. Undertake any additional development indicated by the results of the development requested above, and re-adjudicate the claims. If any remains denied, the RO/AMC should issue an appropriate supplemental SOC (SSOC) and afford the Veteran and his representative the opportunity to respond. The case should then be returned to the Board, if in order, for further review.


The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
DEBORAH W. SINGLETON
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs