http://www.va.gov/vetapp16/Files4/1630481.txt

Citation Nr: 1630481 
Decision Date: 07/29/16 Archive Date: 08/04/16

DOCKET NO. 12-20 798A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Salt Lake City, Utah

THE ISSUES

1. Entitlement to service connection for tinnitus. 
 
2. Entitlement to service connection for a psychiatric disability, to include bipolar disorder.

ATTORNEY FOR THE BOARD

S. B. Mays, Counsel

INTRODUCTION

The Veteran had active service in the United States Army from September 1979 to September 1982, with subsequent service in Reserves. 

This matter was originally before the Board of Veterans' Appeals (Board) on appeal from a rating decision dated in October 2011 of the Salt Lake City, Utah, Department of Veterans Affairs (VA) Regional Office (RO).

In November 2015, the Board remanded the claim to schedule the Veteran for a hearing, by his request. The RO subsequently scheduled a hearing for July 2016. Days prior to the hearing, the RO called the Veteran to determine whether he would attend the hearing as he had relocated. However, the Veteran did not answer the call and did not respond to the message left. He ultimately failed to report to the hearing. He has not provided a reason for his failure to attend and has not requested that it be rescheduled. Accordingly, the Board finds that the hearing request has been withdrawn.

The issue of entitlement to service connection for a psychiatric disability is REMANDED to the Agency of Original Jurisdiction.

In April 2013, the RO received the Veteran's Fully Developed Claim for service connection for hearing loss, diabetes, overweight, left knee disability, and whole body disability. Review of the record shows that only the overweight claim has been adjudicated by the RO. Accordingly, the Veteran's service connection claims for hearing loss, diabetes, left knee disability, and "whole body" are REFERRED to the AOJ for the appropriate development. The Board does not have jurisdiction over those claims.

FINDING OF FACT

Resolving all doubt in favor of the Veteran, tinnitus manifested during active service.

CONCLUSION OF LAW

The criteria to establish service connection for tinnitus are met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2015).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran seeks service connection for tinnitus. Because tinnitus is subjective, its existence is generally determined by whether the Veteran claims to experience it. For VA purposes, tinnitus has been specifically found to be a disability with symptoms that can be identified through lay observation alone. Charles v. Principi, 16 Vet. App. 370 (2002). 

Service connection may be granted if it is shown the Veteran developed a disability resulting from an injury sustained or disease contracted in the line of duty, or for aggravation during service of a pre-existing condition beyond its natural progression. 38 U.S.C.A. §§ 1131, 1153 (West 2014); 38 C.F.R. §§ 3.303, 3.306 (2015). Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

The Veteran reported on service entry that he had ear trouble which the examiner described as a history of increased pressure in the ears. That July 1979 Report of Medical History is barely legible. Tinnitus was not reported by the Veteran or noted by the examiner. Clinical evaluation of the ears during the July 1979 entrance examination was normal.

A review of the service medical records shows no tinnitus complaints, treatment, or diagnoses. The Veteran sought treatment in November 1979 and August 1981 for left and right ear pain, respectively, and the ears contained foreign objects which were then removed. He separated from active service in September 1982.

After-service, on a July 1983 Report of Medical History completed by the Veteran during a Reserve examination, a diagnosis of recurrent otitis was noted. The July 1983 examination report shows an impression of left ear drum perforation and the examiner noted that the Veteran was not qualified for retention and recommended that he consult an ENT specialist. The reports made no mention of tinnitus.

A formal diagnosis of tinnitus is shown in the Veteran's medical records dated May 2011 and forward. During a July 2011 VA audiometric evaluation, the Veteran reported having had intermittent tinnitus for several years and more constant tinnitus in the past year-and-half. During a call to the Veteran in July 2011, he stated that he was on the fence regarding full-time use of hearing aids, and noted that his primary issue was with tinnitus.

At a September 2011 VA audiology examination, the Veteran stated that he was exposed to loud noise in service from grenade explosions, rocket launchers, rifle ranges, machine guns, fork lifts, dump sites where vehicles were destroyed, and from a hydraulic plate flying off of a forklift. He reported the onset of tinnitus during service with intermittent symptoms ever since but with worsening symptoms in past 18 months. He reported that the tinnitus "drives him nuts." After being examined and interviewed, the VA medical examiner determined that the Veteran's tinnitus was less likely as not associated with any hearing loss. 

In the following month, according to October 2011 VA audiology notes, it was recommended that he participate in the Tinnitus Management Program. 

In August 2012, VA received statements in further support of the claim. The Veteran described an in-service incident during which a grenade exploded approximately three feet from him and he recalled that his "ears rang for three days after that." He also reported that he was issued improper hearing protection. He explained that although his military occupational specialty was a correctional specialist, he also spent his last tour in the field when he was transferred to 543rd Supply Company. He also reported that he was taken out to the range at least once a year during service and used an M-16 or M-60. He further remembered a time during service where his company went out to watch, with improper hearing protection, the USS Missouri "fire her big guns." 

In a statement authored by the Veteran's mother, she recalled the Veteran's complaints of ringing ears and noted that his father also had tinnitus.

In a statement authored by the Veteran's former spouse, she recalled that the Veteran complained of ringing in the ears in 1994 when they were dating, and that he continued to make the same complaints during their marriage. She also remembered that when they were married, the Veteran saw two doctors for tinnitus, but noted that those doctors have since retired and that the Veteran's medical records from those doctors are unavailable.

At a September 2013, VA audiology examination by the same examiner who conducted the 2011 examination, the examiner continued the September 2011 opinion that the Veteran's tinnitus was less likely as not related to service. The examiner reasoned that although the Veteran reported significant military noise exposure, his military occupational specialty (MOS) as a correctional specialist was not listed in the MOS Duty Noise Exposure List. The examiner stated that while the Veteran reported that tinnitus began in service, the examiner was unable to find any complaints in the service medical records. The examiner clarified that tinnitus as a symptom of hearing loss was not established as the criteria for a hearing loss disability had not been met. 

The Board has reviewed all evidence of record, both lay and medical, and finds that, with resolution of all doubt in the Veteran's favor, service connection for tinnitus is warranted. The Veteran is currently diagnosed with tinnitus. 

The evidence on the question of in-service exposure to loud noise is, at the very least, in equipoise. Although his MOS as a correctional specialist was not considered by the VA examiner to typically expose one to loud noise, the Veteran has competently reported exposure to loud noise from machine guns, a grenade explosion, and gunfire in the field and at the range, etc. In addition, the service personnel records show that the Veteran received a Sharpshooter Qualification Badge (M-16). 

The claims file does not contain an etiology opinion on the question of whether the Veteran's tinnitus is likely related to service noise exposure. The opinion provided by the September 2011 VA examiner addressed only whether his tinnitus was associated with hearing loss. Further development could be undertaken so as to remand the claim for clarification from the examiner. Nonetheless, the record does otherwise show that the Veteran has competently and credibly asserted throughout the pendency of this claim that he has had the symptoms of tinnitus since service. Indeed, the Board finds the following evidence highly probative as to a relationship between the current tinnitus and military noise exposure: (a) the Veteran's report of first noticing tinnitus during service and since; (b) the Veteran's recollection that his "ears rang for three days after a grenade went off within a few feet of him; (c) the Veteran's report that he spent his last tour with the 543rd Supply Company in the field and was exposed to gunfire; (d) the Veteran's report that he was taken out to the range at least once a year during service and used an M-16 or M-60; and (e) statements of the Veteran's mother and ex-spouse as to witnessing the Veteran complain of tinnitus after service. As lay persons, the Veteran, his mother, and former spouse, are competent to report what they observed and there is nothing in the record that contradicts those assertions, aside from an absence of documented treatment or complaints, which by itself is insufficient to discredit offered testimony. Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). Tinnitus is a disability that can be identified through lay observation alone. Kahana v. Shinseki, 24 Vet. App. 428 (2011). The Board has found his statements that it manifested in service and persisted since that time competent and credible and there is no probative evidence refuting his statements. 

Accordingly, resolving reasonable doubt in service, the Board therefore finds that tinnitus manifested in service and service connection for tinnitus must be granted. Gilbert v. Derwinski, 1 Vet. App. 49 (1990); 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. § 3.102 (2015).

ORDER

Entitlement to service connection for tinnitus is granted.

REMAND

Remand is necessary to provide the Veteran with a VA mental health examination and opinion. 

The Veteran has a current psychiatric disability, variously diagnosed as bipolar disorder; a mood disorder, not otherwise specified; anxiety disorder; affective disorder; personality disorder; and an alcohol abuse disorder, as shown in VA, private, and Social Security Administration medical records.

The Veteran asserts that a current psychiatric disorder is related to active service. He describes having been anxious, depressed, and manic during service. He notes that he had highs and lows during service, and that the lows, in particular, led to depression and overeating. He felt ridiculed because of his weight, but kept his problems to himself. He notes that his depression progressed to the point of attempting suicide during service. He also felt that working in the jail as a correctional specialist made him feel anxious. He further states that he was court- martialed for starting fights. A review of his service medical records shows evaluations for being overweight and a questionable impression of a personality disorder. The Board finds that a VA mental health examination should be provided to resolve the question of etiology and relationship to service. 

Accordingly, the case is REMANDED for the following action:

1. Obtain the Veteran's current VA medical records and associate them with the claims file.

2. Obtain the Veteran's service personnel records and associate them with the claims file.

3. Then, provide the Veteran with a VA examination to determine the nature and etiology of any current psychiatric disability. The examiner must review the claims file and should note that review in the report. The examiner should provide a rationale for all opinions offered. After reviewing the record, the examiner is asked to respond to the following:

(a). Diagnose all psychiatric disorders currently shown, to include bipolar I disorder, personality disorder, depression, and anxiety disorder. 

(b). For any currently diagnosed personality disorder, determine whether it clearly and unmistakably pre-existed entrance to service. If so, was the personality disorder subjected to a superimposed disease or injury in service that resulted in a current acquired psychiatric disorder?

(b) Is it clear and unmistakable that any psychiatric disability preexisted entrance to service? If so, state what evidence supports that finding. If so, is it clear and unmistakable that the preexisting psychiatric disability was not permanently increased in severity beyond the natural progress of the disorder during service?

(c). For any currently diagnosed psychiatric disability that did not clearly and unmistakably pre-exist service, determine whether each psychiatric disability had its onset in service or is otherwise related to service. In so doing, address all relevant evidence, specifically to include: (i) a September 1979 service medical record showing evaluation for questionable obesity, with subsequent records showing participation in the overweight program; (ii) an October 1981 service medical record showing referral by his commander for mental evaluation with suspicion of a personality disorder; (iii) the Veteran's reports of in-service feelings of highs and lows, mania and depression leading to excessive eating and weight gain, as well as reports of self-medicating with alcohol and drugs during service, and being court-martialed, such as in the May 2012 substantive appeal and an April 2013 Veteran's statement; and (iv) any relevant service personnel records. 

4. Then, readjudicate the claim. If any decision is adverse to the Veteran, issue a supplemental statement of the case and allow the applicable time for response. Then, return the case to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999). This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
Harvey P. Roberts
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs