Citation Nr: 1749175 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 11-15 121A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss. 

2. Entitlement to service connection for a genitourinary disorder, claimed as gonococcic urethritis. 

3. Entitlement to an initial rating in excess of 10 percent for ischemic heart disease. 


REPRESENTATION

Appellant represented by: John P. Dorrity, Agent


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Thomas D. Jones, Counsel


INTRODUCTION

The Veteran served on active duty from November 1966 to November 1968. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from rating decisions of a Regional Office (RO) of the Department of Veterans Affairs (VA) in Newark, New Jersey. In June 2012, the Veteran testified before a Veterans Law Judge seated at the RO. A transcript of this hearing is associated with the file. 

The issues of service connection for bilateral hearing loss and gonococcic urethritis, and for an increased rating for ischemic heart disease were previously before the Board in April 2014, at which time they were remanded for additional development. The required development has been completed and this case is appropriately before the Board. See Stegall v. West, 11 Vet. App. 268 (1998). 

The Veteran has also perfected appeals on the issues of increased ratings for bilateral peripheral neuropathy, diabetes mellitus, and posttraumatic stress disorder (PTSD), and for a total disability rating based on individual unemployability due to service-connected disabilities (TDIU). In his May 2015 and September 2017 VA Form 9s, he requested a hearing before a Veterans Law Judge. In an October 2017 letter, the Board acknowledged his pending hearing request regarding those issues, and informed him he was on the list of appellants awaiting a hearing. As such, those issues will be addressed at a later date following the requested hearing. 



FINDINGS OF FACT

1. The Veteran did not have impaired hearing of either ear at the time of his separation from service or within one year of separation from service; bilateral hearing loss was diagnosed many years after separation from service and is not attributable to any noise exposure during service.

2. A current genitourinary disorder did not manifest during service, has not been continuous since service separation, and has not been shown to be related to service, to include any incident or event therein. 

3. The Veteran's ischemic heart disease is manifested by subjective complaints of occasional shortness of breath, especially with exertion; objective findings include no congestive heart failure, no cardiac hypertrophy or dilatation, left ventricular ejection fraction not less than 50 percent or less, and METS (metabolic equivalent) greater than 10. 


CONCLUSIONS OF LAW

1. A bilateral hearing loss disorder was not incurred in service. 38 U.S.C.A. §§ 1110, 1112, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309, 3.385 (2017). 

2. A chronic genitourinary disorder was not incurred in service, and a current genitourinary disorder is not presumed to have been so incurred. 38 U.S.C.A. §§ 1110, 1112, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 3.303, 3.307, 3.309 (2017). 

3. The criteria for an initial rating in excess of 10 percent for ischemic heart disease have not been met. 38 U.S.C.A. §§ 1155, 5103(a), 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.104, Diagnostic Code (DC) 7005 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection Claims

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may also be established for any disease diagnosed after discharge when the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). A grant of service connection generally requires: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship (nexus) between the present disability and the disease or injury incurred in or aggravated by service. See Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009). 

Service connection may also be established under 38 C.F.R. § 3.303(b), if a chronic disease or injury is shown in service, and subsequent manifestations of the same chronic disease or injury at any later date, however remote, are shown, unless clearly attributable to intercurrent causes. Continuity of symptomatology after service is required where a condition noted during service is not, in fact, chronic, or where a diagnosis of chronicity may be legitimately questioned. 

Next, the Board notes that the Veteran has service in Vietnam during his active duty period. See 38 C.F.R. § 3.309(e). Any veteran who, during active military, naval or air service, served in the Republic of Vietnam during the Vietnam Era is presumed to have been exposed during such service to certain herbicidal agents (e.g., Agent Orange) unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during service. 

If the veteran was exposed to an herbicide agent during service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there was no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied, including ischemic heart disease. 38 C.F.R. § 3.309(e). While ischemic heart disease is noted to be a presumptive disorder under 38 C.F.R. § 3.309(e), this term does not include hypertension. 38 C.F.R. § 3.309(e), Note 3. The availability of presumptive service connection for a disability based on exposure to herbicides does not preclude a veteran from establishing service connection with proof of direct causation, or on any other recognized basis. Stefl v. Nicholson, 21 Vet. App. 120 (2007); see also Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

Hearing Loss

The Veteran seeks service connection for bilateral hearing loss. He asserts his exposure to gunfire and other acoustic trauma resulted in chronic bilateral hearing loss, and service connection is therefore warranted. 

Specific to claims for service connection, impaired hearing is considered a disability for VA purposes when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; the thresholds for at least three of these frequencies are 26 or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385. 

The Board notes that prior to November 1, 1967, service department audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). In order to facilitate data comparison in this decision, for service department audiometric results through October 31, 1967, the ASA standards have been converted to ISO-ANSI standards.

Considering first the service treatment records, the Veteran was afforded a service entrance examination in August 1966. At that time, the audiological examination revealed that he had hearing acuity, in pure tone threshold values as follows (converted to ISO-ANSI standard units): 





HERTZ



500
1000
2000
3000
4000
RIGHT
20
5
5
N/A
20
LEFT
20
10
5
N/A
10

Speech audiometry scores were not provided. The service treatment records are negative for any treatment for or diagnoses of a hearing-related complaints. The records confirm his service as a gunner and fire crewman; as such, his reported exposure to acoustic trauma is consistent with the circumstances of his service. 

A service separation examination was afforded the Veteran in November 1968. At that time, the audiological examination revealed that he had hearing acuity, in pure tone threshold values as follows: 




HERTZ



500
1000
2000
3000
4000
RIGHT
5
0
5
N/A
15
LEFT
0
5
5
N/A
15

Speech audiometry scores were not provided. Thus, based on the above, the Veteran did not have hearing loss of either ear, as defined by VA, at any time during service or at service separation. 

Post-service, the record does not reflect a diagnosis of a hearing loss disorder until 2010. On VA examination in May 2010, bilateral sensorineural hearing loss was confirmed. Pure tone thresholds, in decibels, were as follows:




HERTZ



500
1000
2000
3000
4000
RIGHT
15
5
0
30
65
LEFT
35
35
55
60
70

Speech discrimination using the Maryland CNC word list test was 94 percent in the right ear and 88 percent in the left. Regarding the etiology of the current hearing loss, a VA examiner reviewed the claims file and opined that it was less likely than not that the Veteran's current bilateral hearing loss was either incurred in or the result of active duty service. 

The examiner explained that while the Veteran was exposed to weapons fire in service, he was without hearing loss on examination at service separation. The examiner further noted that the Veteran did not exhibit a shift in hearing acuity during service, when comparing hearing acuity at service entrance and exit. The examiner thus concluded that it was less likely the present hearing loss condition was due to military noise. 

Having considered the entirety of the record, the preponderance of the evidence is against the award of service connection for a bilateral hearing loss disorder. In considering the claim, a hearing loss disorder of either ear was not diagnosed during service, within a year thereafter, or for many years after service separation. Likewise, the Veteran did not report or seek treatment for a hearing disorder until 2010, over 40 years after his service separation. This lengthy period without complaint or treatment is one factor that there has not been ongoing symptomatology, and weighs heavily against the claim. 

Further, this claim was referred to a VA examiner for a diagnosis and opinion. After reviewing the claims file and examining the Veteran, a audiologist rendered a competent medical opinion opining that the current diagnosis of a bilateral hearing loss disorder was not incurred in and was not otherwise related to active duty service. The examiner cited to specific records within the claims file and supported the opinion with a medical rationale. This medical opinion is uncontroverted in the record and is considered highly probative by the Board. 

The Board acknowledges that the failure to meet VA's criteria for hearing loss at the time of separation from active service is not necessarily a bar to service connection for hearing loss disability. See Hensley v. Brown, 5 Vet. App. 155, 159-60 (1993). In the present case, however, the examiner reviewed the entire record, including the service records indicating military occupational specialty (MOS), and determined both that the Veteran did not experience onset of a hearing loss disorder during service or within a year thereafter, and that any current hearing loss disorder was unrelated to any incident of service. 

The Veteran himself asserted in his written statements that his bilateral hearing loss disorder was incurred during service. While he is competent to report such symptomatology as a perceived decline in hearing acuity, he is not competent to assert that a permanent decline in hearing acuity was occurred in service or is otherwise related to in-service acoustic trauma. A layperson is competent to report observable symptomatology which comes to him via his senses. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence). 

Some medical issues, however, require specialized training for a determination as to diagnosis and causation, and such issues are therefore not susceptible of lay opinions on etiology, and the appellant's statements therein cannot be accepted as competent medical evidence. See Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) ("It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant"); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 ("sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer"). 

Lay testimony on the etiology of a current diagnosis of a hearing loss disorder is not competent in the present case, because the Veteran is not competent to diagnosis the exact onset or cause of a hearing loss disorder. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana v. Shinseki, 24 Vet. App. 428, 433, n. 4 (2011) (lay witnesses are competent to opine as to some matters of diagnosis and etiology, and the Board must determine on a case by case basis whether a veteran's particular disability is the type of disability for which lay evidence is competent). While he is competent to testify regarding such observable symptomatology as a decline of hearing acuity, he is not competent to testify regarding the internal workings of the ear. He has also not reported a medical opinion told to him by a competent expert, and his assertions have not later been corroborated by a competent expert. 

For the foregoing reasons, the preponderance of the evidence is against the claim for service connection for a bilateral hearing loss disorder, as no such disorder was either incurred in service, manifested to a compensable degree within a year thereafter, or is otherwise etiologically related to service; therefore, this claim must be denied. The benefit-of-the-doubt doctrine is not for application. 

Genitourinary Disorder

The Veteran seeks service connection for gonococcic urethritis. He states this disability was first diagnosed in service, and has been chronic since that time; therefore, service connection is warranted. 

Considering first the service treatment records, a diagnosis of a genitourinary disorder is confirmed. In April 1968, the Veteran sought treatment for genitourinary symptoms, including an irregular penile discharge and painful urination. Acute gonococcic urethritis was diagnosed and he was given medication. The remainder of the service treatment records are negative for any further diagnoses of a genitourinary disorder. On examination for service separation in November 1968, he was without any noted abnormalities of the genitourinary system. On his concurrent Report of Medical History, he noted a history of painful urination. 

Thus, based on the above, while an in-service diagnosis of gonococcic urethritis is of record, this disorder was diagnosed as acute, not chronic, which is supported by the evidence that it was not noted on subsequent service treatment records or on the service separation examination. Furthermore, the Veteran did not seek treatment for gonococcic urethritis for many years after service. This lengthy period without complaint or treatment is one factor of evidence that there has not been ongoing symptomatology, and weighs heavily against the claim. 

With regard to entitlement to service connection under the provisions of 38 C.F.R. § 3.303(a), there is no competent medical opinion of record that links any current genitourinary disorder with his active duty. The Veteran was afforded an April 2010 VA genitourinary examination. His claims file, to include the service treatment records, was reviewed in conjunction with the examination. 

His in-service diagnosis of gonococcic urethritis was noted. He also reported a post-service diagnosis of genital herpes, with onset in approximately 1976. Since that time, he has experienced occasional genital rashes occurring every two years or so. Some erectile dysfunction was also reported. The final diagnoses included a history of acute gonococcic urethritis, with adequate treatment, and of herpes genitalis. Erectile dysfunction was also diagnosed. 

Regarding the etiology of these current disorders, the examiner stated they were unrelated to service, as they had their onset years after service. While the Veteran did contract gonococcic urethritis in service, this infection was, in the opinion of the examiner, acute with an adequate response to treatment and no chronic residuals or recurrences were noted. This medical opinion, rendered by a competent expert following physical evaluation of the Veteran and review of the record, to be highly probative. Moreover, this opinion is otherwise uncontroverted within the record, and service connection for gonococcic urethritis is denied. 

The Board has considered the Veteran's lay statements that a current genitourinary disorder is related to the in-service gonococcic urethritis infection. At times, laypersons are competent to provide medical conclusions, including with regard to etiology and diagnosis. In addition, laypersons are competent to report symptomatology and medical history. In determining whether statements submitted by a veteran are credible, the Board may consider internal consistency, facial plausibility, consistency with other evidence, and statements made during treatment. Caluza v. Brown, 7 Vet. App. 498 (1995). 

In the present case, the Board does not find the Veteran competent to provide etiological evidence regarding a nexus with service. He does not have the requisite medical training or credentials to be able to render a competent medical opinion regarding the cause of any current genitourinary disorder. The etiology of a genitourinary disorder is a complex medical etiological question dealing with internal elements of the genitourinary system, and such a disability is diagnosed primarily on clinical findings and testing. 

Thus, while the Veteran is competent to report genitourinary symptoms that he experienced at any time, under the facts of this case, he is not competent to opine on whether there is a link between a current genitourinary disorder and service and/or any in-service disease or injury. He has also not claimed he is reporting an expert medical (nexus) opinion as told to him by a doctor. 

Finally, while the Veteran's Vietnam service and subsequent herbicide exposure is acknowledged, gonococcic urethritis is not among the disabilities for which service connection is presumed for veterans with confirmed herbicide exposure. Additionally, he has not submitted competent evidence of a nexus between such exposure and his current genitourinary disorders. 

In sum, the preponderance of the evidence is against the award of service connection for gonococcic urethritis. While the Veteran was diagnosed with gonococcic urethritis in service, this disorder was acute and without noted chronic residuals or recurrences. Additionally, the current genitourinary disorders, genital herpes and erectile dysfunction, were not as likely as not related to service. With the preponderance of the evidence against the claim there is no doubt to be otherwise resolved. As such, the appeal is denied. 


Increased Rating for Ischemic Heart Disease

The Veteran seeks an initial rating in excess of 10 percent for ischemic heart disease. He asserts this disability results in impairment more severe than is currently rated, and an increased rating is therefore warranted. 

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. 

If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. 38 C.F.R. § 4.3. Staged ratings are appropriate when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119 (1999). 

The Veteran's ischemic heart disease is rated under DC 7005, for coronary artery disease (arteriosclerotic heart disease). Under this code, a 100 percent rating is warranted where there is resulting chronic congestive heart failure, workload of 3 METs or less results in dyspnea, fatigue, angina, dizziness, or syncope, or left ventricular dysfunction with an ejection fraction of less than 30 percent. 60 percent is warranted for more than one episode of acute congestive heart failure in the past year, where workload of greater than 3 METs but not greater than 5 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or left ventricular dysfunction with an ejection fraction of 30 to 50 percent. 

30 percent is warranted where workload of greater than 5 METs but not greater than 7 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or there is evidence of cardiac hypertrophy or dilatation on electrocardiogram, echocardiogram, or X-ray. 10 percent is warranted where workload of greater than 7 METs but not greater than 10 METs results in dyspnea, fatigue, angina, dizziness, or syncope, or continuous medication is required. 

One MET is the energy cost of standing quietly at rest and represents an oxygen uptake of 3.5 milliliters per kilogram of body weight per minute. When the level of METs at which dyspnea, fatigue, angina, dizziness, or syncope develops is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity (expressed in METs and supported by specific examples, such as slow stair climbing or shoveling snow) that results in dyspnea, fatigue, angina, dizziness, or syncope may be used. 38 C.F.R. § 4.104, Note (2). 

In an April 2010 VA examination, it was noted that the Veteran's ischemic heart disease had resulted in a myocardial infarction in 1998 and stent placement in 2008. Currently, he did not have cardiac hypertrophy, dilation, or congestive heart failure. Results of a January 2010 stress test at a private facility were reviewed, and it was noted that he was capable of achieving 12.8 METs. His cardiac ejection fraction was within normal limits. 

In a January 2014 VA examination, the Veteran was again noted to be without congestive heart failure, cardiac hypertrophy, or dilation. The examiner noted that a March 2013 stress test indicated a METs level of 10.8. An echocardiogram showed left ventricular ejection fraction at 72 percent. 

Based on a review of the totality of the record, the preponderance of the evidence is against an initial rating in excess of 10 percent for ischemic heart disease at any time during the pendency of the appeal. The record reflects no congestive heart failure, cardiac hypertrophy or dilatation, or left ventricular ejection fraction of 50 percent or less. Additionally, the Veteran has had at all times of record a METs level in excess of 10. Such assessment is most consistent with the criteria for a 10 percent rating under DC 7005. Thus, no higher rating than 10 percent is warranted under DC 6006.

While the Veteran has reported such symptoms as occasional shortness of breath, especially with exertion, such symptoms are contemplated in the criteria for the Veteran's rating which include dyspnea, fatigue, angina, dizziness, or syncope for the workload consistent with his disability, as well as a requirement of continuous medication. 

Accordingly, an initial rating in excess of 10 percent for ischemic heart disease is not warranted, and there is no basis for any further staged rating of the Veteran's disability. Finally, the record does not suggest and he has not asserted that his ischemic heart disease, in and of itself, results in symptoms unusual in nature or not contemplated by the schedular criteria, and extraschedular consideration is therefore not warranted. As noted in the introduction, he has initiated and perfected an appeal for a TDIU, and that issue remains pending. 

Finally, as provided for by the Veterans Claims Assistance Act of 2000 (VCAA), VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a). In the present case, there is no indication in this record of a failure to notify. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015). Likewise, there is no indication in the record of a failure to assist the Veteran in the development of his claim. See Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to VA's duty to assist). 



ORDER

Service connection for bilateral hearing loss is denied. 

Service connection for a genitourinary disorder is denied. 

An initial rating in excess of 10 percent for ischemic heart disease is denied. 



______________________________________________
L. HOWELL
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs